(Reap. Dec. 10033)

MINKAP OF CALIFORNIA, INC., BY FRANK P. DOW CO., INC., OF L. A.
*v.* UNITED STATES

Entry No. 15916, etc.

(Decided June 19, 1961)

*Lawrence & Tuttle* (*Edward N. Glad* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon* and *Samuel D. Spector*, trial attorneys), for the defendant.

JOHNSON, Judge: These appeals for reappraisement, consolidated at the trial, involve ladies' sweaters, exported from Japan during the period from June 1957 through December 1957.

One group of sweaters is composed of yarn, consisting of 25 per centum silk and 75 per centum lamb's wool, in 15 different styles. Another group is composed of yarn, consisting of 20 per centum Angora and 80 per centum lamb's wool, in 6 different styles. The third group is composed of yarn, consisting of 100 per centum lamb's wool, in 1 style.

The merchandise was obtained from three different sources of supply: The first is indicated on the invoices as Takii & Co. (reappraisement Nos. R59/12064, R59/12331, R59/13021, and R59/13027); the second as Minomo Seni K. K. (reappraisement Nos. R59/12047 and R59/13027); and the third as Tokyo Marusangumi Co., Ltd. (reappraisement No. R59/14153).

It was stipulated at the trial that no foreign value existed for such or similar merchandise during the period in question. It was also stipulated that the merchandise supplied by Takii & Co. and Minomo Seni was appraised on the basis of cost of production with Nichimen Co., Ltd. (also known as Japan Cotton & General Trading Co., Ltd.), considered as the manufacturer. The merchandise supplied by Tokyo Marusangumi was appraised on the basis of export value. Plaintiff conceded at the trial that the latter appraisal was correct.

It is claimed by plaintiff (1) that Nichimen was the buying agent and not the manufacturer and that, therefore, the appraised values based on a cost of production, which included percentages representing its general expenses and profit, were incorrect, and (2) that the

proper basis for determining dutiable value is the export value of similar merchandise.

At the trial, sketches of the various sweater styles were received in evidence as plaintiff's illustrative exhibits 2 through 23.

The following table lists the various styles, exhibit numbers, appraised values, and claimed export values:

(a) Ladies' sweaters, composed of 25 per centum silk and 75 per centum lamb's wool:

| Style No. | Plaintiff's illustrative exhibit No. | Appraised value on cost of production basis per doz. sweaters, net packed | Contended export value of similar sweaters per doz. sweaters, net packed |
|---|---|---|---|
| Alma | No. 2 | $44. 86 | $37. 53 |
| Barbara | No. 3 | 47. 56 | 40. 56 |
| Clarice | No. 4 | 46. 50 | 38. 52 |
| Diane | No. 5 | 42. 65 | 35. 64 |
| Ellen | No. 6 | 44. 66 | 36. 80 |
| Gina | No. 7 | 40. 84 | 33. 95 |
| Honey | No. 8 | 36. 07 | 30. 13 |
| Inez | No. 9 | 35. 16 | 29. 47 |
| Janice | No. 10 | 38. 30 | 31. 33 |
| Kim | No. 11 | 39. 41 | 32. 92 |
| Leta | No. 12 | 40. 20 | 33. 00 |
| Margo | No. 13 | 38. 42 | 31. 17 |
| 630 | No. 14 | 28. 56 | 23. 33 |
| 631 | No. 15 | 35. 66 | 30. 98 |
| 600 | No. 16 | 36. 46 | 32. 35 |

(b) Ladies' sweaters, composed of 20 per centum Angora and 80 per centum lamb's wool:

| Style No. | Plaintiff's illustrative exhibit No. | Appraised value on cost of production basis per doz. sweaters, net packed | Contended export value of similar sweaters per doz. sweaters, net packed |
|---|---|---|---|
| 101 | No. 17 | $37. 55 | $32. 00 |
| 102 | No. 18 | 37. 63 | 32. 30 |
| 602 | No. 19 | 39. 76 | 34. 56 |
| 603 | No. 20 | 35. 16 | 31. 19 |
| 604 | No. 21 | 36. 51 | 32. 58 |
| 606 | No. 22 | 37. 11 | 33. 31 |

(c) The ladies' sweaters, composed wholly of lamb's wool:

| Style No. | Plaintiff's illustrative exhibit No. | Appraised value on cost of production basis per doz. sweaters, net packed | Contended export value of similar sweaters per doz. sweaters, net packed |
|---|---|---|---|
| 100 | No. 23 | $32.08 | $23.00 |

Testimony was given for the plaintiff by George Gonick, an associate and partner of Minkap of California, the plaintiff herein; Tohru Kanaoka, presently with the textile section of Nichimen & Co. at Los Angeles, but formerly employed in the Made-Up Textile Department of Nichimen & Co. in Osaka, Japan; and Jairo Wada, presently president of Marusan Knitwear Export Co. and formerly

managing director of Tokyo Marusangumi Co., Ltd. Defendant introduced into evidence reports of Treasury Representative Albert J. Francis, Jr., dated March 6, 1958, and December 5, 1958, respectively (defendant's exhibits A and B).

According to the evidence presented, the designs for the sweaters illustrated by plaintiff's exhibits 2 through 23 were made by Minkap from their own ideas, those of their clients, or the dictates of fashion. The composition of the yarn was also specified by Minkap. Before orders were placed, sketches of the sweaters and yarn specifications were given to the makers, samples were produced, and offers made to Minkap.

Mr. Gonick testified that, during the period from June through December 1957, styles illustrated by plaintiff's exhibits 2 through 23 were purchased from Tokyo Marusangumi, from Minomo Seni, and from Fukaki Keori; that Takii & Co. was the knitter for the Fukaki sweaters; that Fukaki was the yarn spinner; and that Minkap had an arrangement with Fukaki to take its total output, but had no such arrangements with Minomo Seni or Tokyo Marusangumi. Both Mr. Gonick and Mr. Kanaoka stated that Nichimen & Co. represented Minkap as buying agent in connection with sales from Takii/Fukaki and Minomo Seni for a commission of 5 per centum of the ex-factory prices.

The evidence is not clear as to the exact arrangement among Minkap, Nichimen, Takii, and Fukaki, but, in view of other facts appearing in the record, it is not necessary to go into this relationship in detail.

Mr. Wada testified that Tokyo Marusangumi was both a manufacturer and an exporter; that it negotiated with customers and took orders; that it bought yarn from a yarn supplier, and subcontracted the knitting, and then shipped the sweaters. From 1953 through 1956, it had an exclusive arrangement with A. O. Elliot Import Corp. in New York, but that was terminated at the end of 1956. The witness then investigated to find out who the big importers were, sent letters to them, and, in January 1957, came to this country and visited various firms to solicit business.

After he returned to Tokyo, Mr. Gonick showed him samples of the styles illustrated by plaintiff's exhibits 2 through 23 and he made up counter samples. During the period of June through December 1957, he made offers to sell sweaters in these styles to Minkap and to his other customers. Mr. Wada testified:

BY MR. GLAD:

Q. Mr. Wada, did you make offers to sell sweaters such as represented by these styles during the period of June '57 through December of '57?

\* \* \* \* \* \* \*

A. Yes, I did.

\* \* \* \* \* \* \*

Mr. FitzGibbon: These offers that you made after June, 1957, were they all to Minkap?

The Witness: Not all to Minkap. We offered all our customers.

Mr. FitzGibbon: Name them.

The Witness: China Consolidated Corporation, and Elliot Import, and J. B. Importers.

Mr. FitzGibbon: You mean to say you offered these styles to those people?

The Witness: Of course, I include these styles, and also other styles we offered.

Mr. FitzGibbon: Didn't you only offer those styles to Minkap?

*      *      *      *      *      *      *

The Witness: Not only Minkap. We offer to others.

Mr. FitzGibbon: Anybody else buy them?

The Witness: Yes, somebody bought them.

The witness stated that he did not have an exclusive arrangement with Minkap in regard to those styles nor any agreement prohibiting him from offering them to anyone else. He did offer these sweaters to others than Minkap, but did not sell any in the same yarn composition. The prices during the period were constant and did not vary because of quantity. Those given by the witness are the same as those listed in the tabulation, *supra*, in the column headed "Contended export value of similar sweaters," except that Mr. Wada did not have records for numbers 630 and 631 and did not make style number 100.

Mr. Wada testified—

Q. * * * Would you repeat again, for the record, to whom you made these offers at these prices of these sweaters during the period June '57 through December of '57, other than Minkap, that is?—A. Yes, we offered China Consolidated Corporation, Los Angeles, and Minnesota Knitting Mills.

Q. How about Elliot?—A. Elliot, and New York Import Corporation.

Q. How about Henry Pollack; how about Otto Gerdau?—A. Also Gerdau.

Q. What was this one you mentioned?—A. Ames C. Foster Corporation.

Q. Can you think of any others?—A. And Arbit Trading.

Q. Did you withhold any of these offerings to any of your customers at these prices during that period—to any of your customers?—A. Yes, we offered the same prices.

Q. I don't think you understood the word "withhold."—A. No, we did not withhold.

Even though the specifications and styles were Minkap's, the witness stated that he offered them to other customers, because the styles were staple and basic, not special styles, but the only actual sales made in the specified yarn compositions were of style 600 to Minkap.

Mr. Gonick testified that, during the period from June through December 1957, he received samples and quotations of prices from Tokyo Marusangumi as stated by Mr. Wada. He did not accept the offers because, at the time they were made, the demand was limited as to sweaters in the yarn composition 25 per centum silk and 75 per

centum lamb's wool, and his purchases were from Takii because of previous commitments. He did purchase from Tokyo Marusangumi sweaters, composed of 20 per centum Angora and 80 per centum lamb's wool. He said also that the styles represented in plaintiff's exhibits 2 through 23 were not unique nor was the yarn composition.

Under the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, under which this merchandise is subject to appraisement, dutiable value is the foreign value or the export value, whichever is higher, or if neither can be ascertained, the United States value, or if that cannot be ascertained, the cost of production.

In the instant case, it has been stipulated that there was no foreign value for such or similar merchandise. Since the merchandise was appraised on the basis of cost of production, it is presumed that the appraiser found that there was no foreign, export, or United States value for such or similar merchandise. *United States* v. *Nicholas Gal* (*Globe Shipping Co., Inc.*), 32 Cust. Ct. 657, A.R.D. 39, appeal dismissed, 42 C.C.P.A. (Customs) 243. Plaintiff challenges these findings to the extent that it claims that there was an export value for similar merchandise.

Export value is defined in the statute as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Plaintiff's claim in the instant case is that the sweaters made by Tokyo Marusangumi were similar to the imported merchandise; that they were freely offered to all purchasers at the prices stated by Mr. Wada; and that such prices represent the export value of the imported merchandise.

No question has been raised as to the similarity of the merchandise, which was made in accordance with the same designs and specifications which Minkap furnished Takii/Fukaki and Minomo Seni.

The issue is whether or not sweaters in the same design and composition were freely offered for sale by Tokyo Marusangumi to all purchasers in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States.

On this point, Mr. Wada stated that he had made samples of the styles illustrated by plaintiff's exhibits 2 through 23 in the compositions specified by Minkap and had offered such merchandise not only to Minkap, but to other customers whom he named. He gave the prices for most of these items and said that they were constant

and did not vary because of quantity. However, no sales were made, except of style No. 600, to Minkap. Mr. Gonick stated that offers of the other styles had been made to Minkap, but he had not purchased any because of lack of demand and his previous commitments to Takii.

It is well settled that the language "freely offered for sale" in section 402 of the Tariff Act of 1930 is not a requirement that there be sales of the merchandise in order to find value; it is sufficient if there are *bona fide* offers to sell all purchasers. *Sandoz Chemical Works* v. *United States*, 13 Ct. Cust. Appls. 466, T.D. 41365; *Robinson & Co.* v. *United States*, 13 Ct. Cust. Appls. 644, T.D. 41486; *Oceanic Trading Co.* v. *United States*, 21 C.C.P.A. (Customs) 146, T.D. 46478; *White Lamb Finlay, Inc.* v. *United States*, 29 C.C.P.A. (Customs) 199, C.A.D. 192; *United States* v. *American Agar & Chemical Co.*, 34 Cust. Ct. 553, A.R.D. 59, appeal dismissed 42 C.C.P.A. (Customs) 244.

In the case last cited, evidence as to the existence of offers to sell was contained in the testimony of two witnesses and in the affidavit of another. It was not contradicted by any evidence offered in behalf of the defendant. Prospects were approached personally and by letter without success. The court held that there was nothing in the nature of the product which would make it unmarketable in Mexico; that real and actual efforts had been made to sell the merchandise; that the offers were *bona fide*; and that foreign value could be determined on the basis of such offers.

In the instant case, testimony was given by Mr. Wada that offers were made at certain prices. This evidence was corroborated, insofar as offers to Minkap were concerned, by Mr. Gonick. It was not contradicted by anything in the record. Mr. Wada at the time had been managing director of Tokyo Marusangumi; he had visited firms in this country to solicit business; he stated positively that he had offered the merchandise to various firms at named prices which did not vary because of quantity.

While statements of an affiant which are conclusions rather than evidentiary facts are not substantial evidence of the facts to be proved (*Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593; *United States* v. *Baar & Beards, Inc.*, 46 C.C.P.A. (Customs) 92, C.A.D. 705), it has been held that a qualified witness is competent to state that the price did not vary with the quantity and that no restrictions accompanied the sales. He may testify as to what he did and how he did it. *Luria Steel & Trading Corp. et al.* v. *United States*, 42 Cust. Ct. 480, Reap. Dec. 9311, modified 42 Cust. Ct. 558, Reap. Dec. 9345; *United States* v. *National Carloading Corp.*, 46 Cust. Ct. 745, A.R.D. 125. Furthermore, where a

witness testifies in open court, he may state opinions and conclusions, since he is subject to cross-examination and may be called upon to give the facts upon which his conclusion is based. *Kobe Import Co.* v. *United States*, 43 C.C.P.A. (Customs) 136, C.A.D. 620; *United States* v. *National Carloading Corp., supra.*

Defendant claims that it was inconceivable that sweaters of the designs and specifications furnished by Minkap would have been offered to other purchasers, but there is nothing in the record to support this contention. Mr. Wada testified that he was not prohibited from making such offers and did make them. Mr. Gonick stated that there was nothing unique about the designs or the yarn compositions.

In my view, the evidence is sufficient to establish *prima facie* that sweaters of the styles and compositions involved herein, except styles numbered 630, 631, and 100, were freely offered for sale by Tokyo Marusangumi to all purchasers at the prices set forth in the tabulation, *supra*, in the column headed "Contended export value of similar sweaters." There is no issue, as to usual wholesale quantities, since there was no variance in price by reason of quantity. Offers to sell the merchandise were made in the ordinary course of soliciting business from United States importers in the principal markets of Japan.

I conclude, therefore, that export value is the proper basis for determining the value of the sweaters involved herein, except styles No. 630, 631, and 100, and that those values are the prices listed in the tabulation, *supra*, in the column headed "Contended export value of similar sweaters." As to styles No. 630, 631, and 100, no evidence has been presented which would establish any values other than the appraised values. The prices charged by Minomo Seni for styles No. 630 and 631 (plaintiff's exhibit 24) may not be considered, since there is no evidence that the merchandise was freely offered to all purchasers at those prices. The appraised values of styles No. 630, 631, and 100 must be sustained.

On the record presented, I find as facts:

1. That the merchandise involved herein consists of sweaters imported from Japan during the period from June 1957 through December 1957.

2. That one group is composed of yarn, consisting of 25 per centum silk and 75 per centum lamb's wool in 15 different styles; that another group is composed of yarn, consisting of 20 per centum Angora and 80 per centum lamb's wool, in 6 different styles; and that a third group is composed of yarn, consisting of 100 per centum lamb's wool, in 1 style.

3. That the merchandise in reappraisement Nos. R59/12047, R59/13021, R59/12064, R59/12331, and R59/13027, which was supplied by Takii & Co. and Fukaki Keori, and Minomo Seni K. K.,

was appraised on the basis of cost of production with Nichimen Co., Ltd., considered as the manufacturer.

4. That the merchandise in reappraisement No. R59/14153, supplied by Tokyo Marusangumi, Ltd., was appraised on the basis of export value, which plaintiff has conceded to be correct.

5. That, during the period in question, such or similar merchandise was not freely offered for sale for home consumption to all purchasers in the principal markets of Japan.

6. That, during the period in question, such merchandise was not freely offered for sale to all purchasers in the principal markets of Japan for exportation to the United States.

7. That, during the period in question, similar sweaters in the styles and yarn compositions involved herein, except styles No. 630, 631, and 100, were freely offered for sale by Tokyo Marusangumi to all purchasers in the principal markets of Japan for exportation to the United States at the following prices, f.o.b. port, per dozen, net packed, which prices did not vary with the quantity purchased:

(a) Ladies' sweaters, composed of 25 per centum silk and 75 per centum lamb's wool:

| Style No. | Price |
|---|---|
| Alma | $37.53 |
| Barbara | 40.56 |
| Clarice | 38.52 |
| Diane | 35.64 |
| Ellen | 36.80 |
| Gina | 33.95 |
| Honey | 30.13 |
| Inez | 29.47 |
| Janice | 31.33 |
| Kim | 32.92 |
| Leta | 33.00 |
| Margo | 31.17 |
| #600 | 32.35 |

(b) Ladies' sweaters, composed of 20 per centum Angora and 80 per centum lamb's wool:

| Style No. | Price |
|---|---|
| #101 | $32.00 |
| #102 | 32.30 |
| #602 | 34.56 |
| #603 | 31.19 |
| #604 | 32.58 |
| #606 | 33.31 |

I conclude as matters of law:

1. That export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the sweaters covered by reappraisement Nos. R59/

12047, R59/13021, R59/12064, R59/12331, and R59/13027, except styles No. 630, 631, and 100.

2. That such values are the prices listed in finding of fact No. 7, *supra*.

3. That the proper values of sweaters in styles No. 630, 631, and 100 are the appraised values.

4. That, since the appraised value in reappraisement No. R59/14153 has been conceded to be correct, said appeal must be dismissed.

Judgment will be rendered accordingly.