(A.R.D. 144)

UNITED STATES v. MINKAP OF CALIFORNIA, INC., BY FRANK P. DOW CO., INC., OF L.A.

Entry No. 15916, etc.

## First Division, Appellate Term

(Decided March 29, 1962)

*William H. Orrick, Jr.*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellant.

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Hadley S. King* and *Edward N. Glad* of counsel) for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: In this proceeding, we review the decision of Johnson, J., reported as *Minkap of California, Inc.* v. *United States*, 46 Cust. Ct. 723, Reap. Dec. 10033, which involved certain ladies' sweaters, exported from Japan during the period from June 1957 through December 1957. Following is a schedule of the various styles and different yarn compositions of the sweaters in question, with the appraised values on the basis of statutory cost of production, and the claimed export values.

Ladies' sweaters, composed of 25 per centum silk and 75 per centum lamb's wool:

| Style No. | Plaintiff's illustrative exhibit No. | Appraised value on cost of production basis per doz. sweaters, net packed | Contended export value of similar sweaters per doz. sweaters, net packed |
| --- | --- | --- | --- |
| Alma | No. 2 | $44. 86 | $37. 53 |
| Barbara | No. 3 | 47. 56 | 40. 56 |
| Clarice | No. 4 | 46. 50 | 38. 52 |
| Diane | No. 5 | 42. 65 | 35. 64 |
| Ellen | No. 6 | 44. 66 | 36. 80 |
| Gina | No. 7 | 40. 84 | 33. 95 |
| Honey | No. 8 | 36. 07 | 30. 13 |
| Inez | No. 9 | 35. 16 | 29. 47 |
| Janice | No. 10 | 38. 30 | 31. 33 |
| Kim | No. 11 | 39. 41 | 32. 92 |
| Leta | No. 12 | 40. 20 | 33. 00 |
| Margo | No. 13 | 38. 42 | 31. 17 |
| 600 | No. 16 | 36. 46 | 32. 35 |

Ladies' sweaters, composed of 20 per centum Angora and 80 per centum lamb's wool:

| Style No. | Plaintiff's illustrative exhibit No. | Appraised value on cost of production basis per doz. sweaters, net packed | Contended export value of similar sweaters per doz. sweaters, net packed |
|---|---|---|---|
| 101 | No. 17 | $37. 55 | $32. 00 |
| 102 | No. 18 | 37. 63 | 32. 30 |
| 602 | No. 19 | 39. 76 | 34. 56 |
| 603 | No. 20 | 35. 16 | 31. 19 |
| 604 | No. 21 | 36. 51 | 32. 58 |
| 606 | No. 22 | 37. 11 | 33. 31 |

When the appraiser adopted cost of production as the basis for appraisement of the sweaters in question, the presumption of correctness attaching to such action implies that the appraising officer found neither a foreign, export, nor United States value for such or similar merchandise. *United States* v. *Schroeder & Tremayne, Inc., et al.*, 41 C.C.P.A. (Customs) 243, C.A.D. 558, and *Golding Bros. Co., Inc.* v. *United States*, 21 C.C.P.A. (Customs) 395, T.D. 46926; *B. A. McKenzie & Co., Inc., et al.* v. *United States*, 47 C.C.P.A. (Customs) 143, C.A.D. 748.

The court below sustained the claimed export values as the proper values for the sweaters under consideration, upon a finding that similar sweaters in the styles and yarn compositions involved herein were freely offered for sale to all purchasers in the principal markets of Japan for exportation to the United States.

Appellant contends that the evidence adduced by appellee (plaintiff below) "as to the offers of this merchandise that was presented was wholly insufficient" (tr. or. arg. 5) for the application of the legal principle, invoked by the trial judge, in holding that "the language 'freely offered for sale' in section 402 of the Tariff Act of 1930 is not a requirement that there be sales of the merchandise in order to find value; it is sufficient if there are *bona fide* offers to sell to all purchasers."

The decision of the trial judge includes a complete analysis of the evidence offered by both parties. In adopting, by reference, the trial court's review of the record, we shall refer specifically only to the phase thereof that is related to the proposition that sweaters, similar to those involved herein, were freely offered for sale to all purchasers in the principal markets of Japan at the time of exportation of the present merchandise.

The designs for the sweaters in question (exhibits 2 to 13, and exhibit 16, *supra*) were made by Minkap of California, Inc., the importer of the present merchandise. Minkap's designs were based on

the dictates of fashion and ideas of its own or those of its clients. Minkap also specified the composition of the yarn used in the sweaters. Before Minkap placed any orders, it supplied sketches of the sweaters and yarn specifications to the Japanese makers, who produced samples and made offers to Minkap.

Most important to the present discussion is the testimony of Jairo Wada, president of Marusan Knitwear Export Co. and formerly managing director of Tokyo Marusangumi Co., Ltd., one of the suppliers of the sweaters under consideration. It appears from his testimony that Tokyo Marusangumi was both a manufacturer and an exporter and that its course of business followed a practice of buying yarn from yarn suppliers, subcontracting the knitting, and then shipping the finished sweaters to customers who had previously ordered them.

During the period in question, the witness came to the United States and visited various firms to solicit their business. After he returned to Tokyo, he was shown samples of the styles involved herein and he made up counter samples. Although the specifications and the styles were Minkap's, they were staple and basic, and not special styles, and, consequently, were offered to customers, other than Minkap.

The witness further testified that Tokyo Marusangumi had no exclusive arrangement with Minkap with respect to the styles under consideration and that there was no agreement prohibiting Tokyo Marusangumi from offering the sweaters to anyone else. Offers for sale were made to others, than Minkap, but no actual sales were made in the same yarn composition. Prices for these sweaters, during the period in question, remained constant and did not vary according to the quantity purchased. The witness' testimony, showing offers to sell sweaters of the styles under consideration, appears in the record as follows (R. 68–70—R. 82–83):

BY MR. GLAD:

Q. Mr. Wada, did you make offers to sell sweaters such as represented by these styles during the period of June '57 through December of '57?

\*      \*      \*      \*      \*      \*      \*

A. Yes, I did.

\*      \*      \*      \*      \*      \*      \*

MR. FITZGIBBON: These offers that you made after June, 1957, were they all to Minkap?

THE WITNESS: Not all to Minkap. We offered all our customers.

MR. FITZGIBBON: Name them.

THE WITNESS: China Consolidated Corporation, and Elliot Import, and J. B. Importers.

MR. FITZGIBBON: You mean to say you offered these styles to those people?

THE WITNESS: Of course, I include these styles, and also other styles we offered.

MR. FITZGIBBON: Didn't you only offer those styles to Minkap?

\*  \*  \*  \*  \*  \*  \*

THE WITNESS: Not only Minkap. We offer to others.

MR. FITZGIBBON: Anybody else buy them?

THE WITNESS: Yes, somebody bought them.

\*  \*  \*  \*  \*  \*  \*

Q. \* \* \* Would you repeat again, for the record, to whom you made these offers at these prices of these sweaters during the period June '57 through December of '57, other than Minkap, that is?—A. Yes, we offered China Consolidated Corporation, Los Angeles, and Minnesota Knitting Mills.

Q. How about Elliot?—A. Elliot, and New York Import Corporation.

Q. How about Henry Pollack; how about Otto Gerdau?—A. Also Gerdau.

Q. What was this one you mentioned?—A. Ames C. Foster Corporation.

Q. Can you think of any others?—A. And Arbit Trading.

Q. Did you withhold any of these offerings to any of your customers at these prices during that period—to any of your customers?—A. Yes, we offered the same prices.

Q. I don't think you understood the word "withhold."—A. No, we did not withhold.

Although statements of a witness that are conclusions rather than evidentiary facts are not substantial evidence of the facts to be proved (*Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593; *United States* v. *Baar & Beards, Inc.*, 46 C.C.P.A. (Customs) 92, C.A.D. 705), it has been held that a qualified witness is competent to state, without the necessity of providing corroborative evidence, that the price did not vary with the quantity sold and that no restrictions accompanied the sales. *Luria Steel & Trading Corp. et al.* v. *United States*, 42 Cust. Ct. 480, Reap. Dec. 9311, modified, 42 Cust. Ct. 558, Reap. Dec. 9345. Furthermore, where a witness testifies in open court, he may state his opinions or conclusions, since he is subject to cross-examination and may be called upon for statements of fact upon which an opinion or a conclusion is based. *Kobe Import Co.* v. *United States*, 43 C.C.P.A. (Customs) 136, C.A.D. 620.

In this case, there is before us the uncontradicted testimony of a qualified witness, who was competent, through experience as managing director of a Japanese manufacturer and exporter, and by personal contact with American importers, to set forth market conditions, as they relate to statutory export value, that control appraisement of the present merchandise. The testimony of the witness, Wada, shows that, during the period in question, he offered sweaters, like those in question, for export to various firms in the United States, at certain

prices which did not vary according to the quantity purchased. Corroboration thereof is found in the testimony of a partner of Minkap who stated, with reference to all of the various styles in question, that "We received offers and samples on all the sizes." (R. 29.)

On the basis of the present record and for all of the reasons hereinabove set forth, we agree with the conclusion of the trial judge in holding that "the evidence is sufficient to establish *prima facie* that sweaters of the styles and compositions involved herein, * * * were freely offered for sale by Tokyo Marusangumi to all purchasers at the prices set forth in the tabulation, *supra*, in the column headed 'Contended export value of similar sweaters,' " and that such "offers to sell the merchandise were made in the ordinary course of soliciting business from United States importers in the principal markets of Japan." The question of usual wholesale quantities is not an issue, since there was no variance of prices by reason of quantity purchased.

The conclusion makes it unnecessary to discuss the proposition, argued by appellant, concerning the status of Nichimen & Co., i.e., "as to whether or not Nichimen & Company was a buying commissionaire or a seller." (Tr. or. arg. 18.)

On the record before us, we find as facts:

1. That the merchandise in question consists of certain sweaters, imported from Japan during the period from June 1957 through December 1957.

2. That one group of these sweaters is composed of yarn, consisting of 25 per centum silk and 75 per centum lamb's wool in 13 different styles, and that another group is composed of yarn, consisting of 20 per centum Angora and 80 per centum lamb's wool, in 6 different styles.

3. That the merchandise was appraised on the basis of cost of production with Nichimen Co., Ltd., considered as the manufacturer.

4. That, during the period in question, such or similar merchandise was not freely offered for sale for home consumption to all purchasers in the principal markets of Japan.

5. That, during the period in question, such merchandise was not freely offered for sale to all purchasers in the principal markets of Japan for exportation to the United States.

6. That, during the period in question, similar sweaters in the styles and yarn compositions involved herein, were freely offered for sale by Tokyo Marusangumi to all purchasers in the principal markets of Japan for exportation to the United States at the following prices, f.o.b. port, per dozen, net packed, which prices did not vary with the quantity purchased:

(a) Ladies' sweaters, composed of 25 per centum silk and 75 per centum lamb's wool:

| Style No. | Price |
|---|---|
| Alma | $37. 53 |
| Barbara | 40. 56 |
| Clarice | 38. 52 |
| Diane | 35. 64 |
| Ellen | 36. 80 |
| Gina | 33. 95 |
| Honey | 30. 13 |
| Inez | 29. 47 |
| Janice | 31. 33 |
| Kim | 32. 92 |
| Leta | 33. 00 |
| Margo | 31. 17 |
| 600 | 32. 35 |

(b)   Ladies' sweaters, composed of 20 per centum Angora and 80 per centum lamb's wool:

| Style No. | Price |
|---|---|
| 101 | $32. 00 |
| 102 | 32. 30 |
| 602 | 34. 56 |
| 603 | 31. 19 |
| 604 | 32. 58 |
| 606 | 33. 31 |

We hold as matters of law:

1.   That export value, as such value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for appraisement of the sweaters in question.

2.   That such values are the prices listed in finding of fact No. 6, *supra*.

The judgment of the trial court is affirmed.

Judgment will be rendered accordingly.