Almond, Judge,
delivered the opinion of the 'court:
This appeal is from the decision of the First Division, Appellate Term of the United States Customs Court[1] affirming the decision and judgment of the trial court,[2] affirming the appraisement of certain ladies’ sweaters exported from J apan between J une and December 1957, *2 based upon the cost of production as defined in section 402(f), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, now section 402a(f) as renumbered by the Customs Simplification Act of 1956. Appellant contends that the merchandise is subject to appraisement on the basis of export value as defined in section 402(d) of said act, as amended, now section 402a (d).
We are concerned here with two petitions for review, only one of which is tenable. The petitions arose as follows:
Judgment on the merits of this case was entered by the Appellate Term of the Customs Court on May 3, 1966 (A.R.D. 209). Thirty-one days later, June 3, 1966, appellant filed with the clerk of this court a petition for review from the judgment. This became Customs Appeal 5262.
Also on June 3, 1966, appellant filed a motion with the Customs Court seeking to vacate its judgment, restore the appeals for reap-praisement to the calendar, and remand them to a single judge for all purposes. The motion was denied by the Customs Court, and on August 1, 1966 appellant filed another petition with this court renewing its petition for a review from the judgment and requesting as well a review from the denial of its motion in the Customs Court. This is Customs Appeal 5268.
Appellant contends that inasmuch as the motion for rehearing was mailed within thirty days of the decision of the Customs Court, it was timely although not actually filed with the clerk of the court until after expiration of the thirty-day time limitation. Appellant therefore argues that appeal 5268 is the viable ¡appeal, and that appeal 5262 is premature. This position is not, in our view, tenable in the light of the provisions of 28 U.S.C. 2640 and Rule 6 of the Rules of the Customs Court, which provide:
28 U.S.C. 2640. Rehearing or retrial.
A division which has decided a case or a single judge who has decided an appeal for a reappraisement may, upon motion of either party made within thirty days next after such decision, grant a rehearing or retrial. [Emphasis added.]
Rule 6. Motions.
(a) Reheakings. — All motions for rehearings must be in writing and filed with the cleric of the court at New York within SO days from the entry of judgment in the case in which rehearing is requested. [Emphasis added.]
In our view, the mailing of a motion or otherwise placing same in the course of delivery to its intended recipient does not constitute the making thereof until delivered to the official designated to receive same for the purpose intended. In other words, the motion is not made within the contemplation of the Statute until filed with the clerk.
*3 The Court of Customs Appeals dealt with an analogous situation in United States v. Thompson-Starrett Co., 12 Ct. Cust. Appls. 28, T.D. 39896. The court stated:
As a general proposition of law it seems clear that unless the statute specifically prescribes that depositing in the mail is sufficient filing, it will not be regarded as a compliance with the statute which prescribes that the filing must be at a definite place and within a specified time. * * *
To the same effect, see Great Pacific Co., Inc. v. United States, 22 CCPA 336, T.D. 47364; Hulse Import Co. et al. and China Liquor Distributing Co. et al. v. United States, 49 Cust. Ct. 208, Abs. 66985; St. Louis Law Printing Co. v. Aufderheide, 226 Mo. App. 680, 45 S.W. 2d 543 (1932).
,We have examined the authorities cited by appellant but do not find them germane to the issue here raised. We find no alternative but to apply the direct unambiguous terms of 28 U.S.C. 2640. The motion in issue was not made in accordance with the mandatory provisions of the statute. Mailing is synonymous with neither “made” nor “filed.”
Since the motion to rehear was untimely, no appeal lies from its denial. In The A. W. Fenton Co., Inc. v. United States, 53 CCPA 98, 100, C.A.D. 884, cert. den. 385 U.S. 970 (1966), this court stated:
Since the filing of the motion for rehearing was untimely according to statute (28 U.S.O. 2640), -the trial court properly denied the hearing and no appeal lies from such denial of motion to rehear, see Pfister v. Northern Illinois Finance Corp., 317 U.S. 144 (1942), rehearing denied 317 U.S. 714 (1943) ; Bowman v. Loperena, 311 U.S. 262 (1940) ; Conboy v. First National Bank, 203 U.S. 141 (1906) ; Roemer v. Bernheim, 132 U.S. 103 (1889). [Emphasis added.]
Customs Appeal No. 5268 is accordingly dismissed.
Holding as we do that Customs Appeal No. 5262 is the viable appeal of record, we turn to its consideration. We must determine whether the decision of the court below is supported by substantial evidence.
The pertinent tariff provisions read as follows:
Section 402a (d) — Export value.
The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.
Section 402a(f) — Cost of production.
For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—
(1) The cost of materials of, and of fabrication, manipulation, or other *4 process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business ;
(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;
(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and
(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the ease of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.
The merchandise here involved consists of ladies’ sweaters of Japá-ñese manufacture produced by either of two Japanese concerns. The goods were made up in two yarn compositions, namely, a blend of 75 percent lamb’s wool and 25 percent silk, and a blend of 80 percent lamb’s wool and 20 percent Angora. They were fashioned in an assortment of styles identified by a girl’s name such as Alma, Barbara, Clarice and so on, or by a number.
Appellant contends that at the times of importation from Japan similar sweaters of Japanese manufacture were freely offered for sale in Japan by a third Japanese concern, Tokyo Marusangumi Co., Ltd., to all purchasers for exportation to the United States at the prices at which they were invoiced and entered. Appellee contends that the evidence is insufficient to establish such offerings of simliar merchandise as claimed and by reason thereof the appraised values, cost of production, must be sustained.
On motion of plaintiff below, the record in the case of Minkap of California, Inc., by Frank P. Dow Co., of L.A. v. United, States, 46 Cust. Ct. 723, Reap. Dec. 10033, affirmed United States v. Minkap of California, Inc., etc., 48 Cust. Ct. 708, A.R.D. 144, was incorporated in the instant case. The merchandise involved in the incorporated case was stipulated to be the same in all material respects as the merchandise here involved. Appellant relies heavily on the testimony adduced in the incorporated case to sustain its burden of proof. In order to evaluate the weight to be accorded appellant’s principal witness, one Jiro Wada, in the light of subsequent facets of the proceedings below, it is necessary to examine in some detail the testimony of this witness.
In the incomporated record, Mr. Wada testified that he had been president of the Marusan Knitwear Export Co. since 1959; that prior thereto he had been managing director of Tokyo Marusangumi since 1947; and that these companies did manufacture and export sweaters. *5 He testified that in 1957 after a personal investigation as to who were the “big importers” in this country, he came over here to meet them. He named the firms which he came to meet as China Consolidated Coi’poration, J.B. Importers, Products of Asia, Minnesota Knitting-Mill, Otto Gerdau, Ames C. Foster Corporation, New York Merchandise Corporation, and Minkap; that he was familiar with the various styles of sweaters, disclosed by the exhibits, and that upon his return to Japan he made up samples and submitted quotations on all these various styles. In this comiection the witness was asked the following questions and gave specific answers:
Q. Do you recall wlien that was, what period of time, ’56, ’57, ’58, ’59? A. Approximately February to June, 1957.
* % % % # ❖ #
Q. Mr. Wada, did you make offers to sell sweaters such as represented by these styles during the period of June ’57 through December of ’57?
A. Yes, I did. [Emphasis added.]
[On direct examination in response to a precise question as to whether or not he offered to make the sweaters depicted in Exhibits 25 and 26 during the period from June to December 1957 “to other importers other than Minkap,” Wada answered:
A. Yes, we offered, and some of them we sold, but for other customers we produced, other compositions, in 75 per cent lamb’s wool, 25 per cent silk. We used other components, but same design and same style.
The witness explicitly testified that he offered compositions of 75 percent lamb’s wool and 25 percent silk as well as 80 percent lamb’s wool and 20 percent Angora; that during the period in question, June through December 1957, the offering prices remained constant and he stated the price at which he offered the sweaters by their style names, such as Alma, Barbara, Clarice, etc.
Turning from the incorporated case to the present case wherein Mr. Wada was subpoenaed by the appellee for further cross-examination, we deem it necessary, as did the court below, to analyze this testimony in the light of statements previously made. We are in accord with the view expressed by the court below that the resolution of the issue posed requires
* * * an examination of both records in order to determine tbe extent to which the ‘testimony in the first case has been changed, weakened, or repudiated, and whether the facts established now would support a finding of export value.
We are in accord also with the view expressed below that:
It is clear, and all parties concede, that Mr. Wada is the key witness. If his testimony does no convince, plaintiff’s case must fail. * * *
Mr. Wada testified in the present case that in the incorporated case he appeared in behalf of his company rather than as an individual. *6 He stated that between 1953 and 1956 Ms company had an exclusive arrangement with a customer in New York which was not reduced to contract form but was a gentleman’s agreement and that when such an agreement exists a conscientious effort is made not to sell to others. After termination of the exclusive arrangement in 1956, the witness stated, he “investigated by myself” to ascertain the big importers here of Japanese merchandise and he came to this country to meet them; that he dealt with Mr. Lowe of China Consolidated Corporation; that he did not meet any person from Products of Asia; that he did not remember the name of the person from the Minnesota Knitting Mill with whom he dealt, but that he met him in a hotel in New York; that he never met the representative of Otto Gerdau but there was a possibility that a Japanese firm in New York could be the representative of Gerdau; that he did not personally meet any representative of New York Merchandise Corporation because that company had a big office in Japan.
Mr. Wada was in nowise taken by surprise as it was made clear that all of the questions related to the periods from January 1957 when he came to this country to speak to customers and June 1957 to December 1957 when he offered the merchandise. He was read the testimony from the incorporated record where he testified that he made up samples and offered quotations on all the various styles from approximately February to June 1957 and where he positively answered that he made offers to sell sweaters during the period from June to December 1957. He was also alerted to his previous testimony to the effect that he offered sweaters to others besides Minkap and that “somebody bought them” but he could not recall the names of the purchasers.
Mr. Wada testified that the name Alma was not used by his company, but that it might have been used by an American firm. When confronted with an exhibit purporting to be a business record of his firm wherein the name Alma appeared, he stated that he did not exactly remember but that the firm might have used the name. On recross-examination, the witness admitted that in the incorporated case, when he testified to personally making offers of the merchandise, he was referring to offers made by his company which were reported to him by other persons. He further admitted that his testimony as to offers between June and December 1957 was not precise. He was asked to explain why he was exact as to the dates of J une to December 1957 in the incorporated case. His response was:
Well, ¡that is the point that I thought I explained, but as I said before, when I read this over this time I suddenly realized that these questions were questions of certain acts admitted by me during a certain time, certain period of time. Now at that time I thought they were asking me about whether I did that particular act or not. I had not thought that the time element was important. So I had *7 answered, “Did you make me an offer?” And then I said,, “Yes, I did.” But now that I read this over I suddenly realize that this time element is an important factor in there. So my final impression or conclusion, after reading through, was that perhaps I was not cautious enough in trying to get that point straight, and I was hasty in assuming that the question had to do with the act and not of the time element involved in that act.
Of vital impact on tbe credibility of his testimony in the incorporated record are the witness’s answers to the questions immediately following:
RXQ. Mr. Wada, realizing now the importance of the time period from June of 1957 through December of 1957 is quite important, would your answers to questions posed to you about the offers made of the sweaters in the case at bar be any different now than they were in September of 1960? A. Yes, my answers would be different.
RXQ. In what respect, sir. A. As I have been repeating myself so many times, I keep saying that if you will extend the time, the period of time, duration of .time wider then I can say that generally certain acts took place within that time, but if you limit me to from certain month to certain month then I cannot answer with assurance, that is, my recollection then becomes vague, and I cannot malee a definite statement.
RXQ. Well, sir, since the facts in the ease relate to shipments made from June of 1957 through December of 1957, am I to understand that you cannot testify with certainty that you offered sweaters of the combinations mentioned before, 75 per cent lamb’s wool, 25 per cent silk, 80 per cent lamb’s wool, 20 per cent Angora, * * * to anybody in the United States during the period of June 1957 to December ’57? A. Yes, if you are asking me that I should be dead sure that absolutely sure that something had taken .place during a certain period of time, like June to December, and say, “You must be dead sure on this,” then I can say no, I cannot be dead sure; I am just telling you that in the general period of time we made offers, and certain things took place. I believe that I am answering all of your questions based on the well, utmost of my conscience and best of my recollection.
RXQ. You mentioned the general period of time. What general period of time would you include, Mr. Wada? A. I think I made that point clear when I was testifying through Rev. Akamatsu, that I wanted sort of a range of time, which starts from somewhere in 1956 and includes 1957, goes into 1958. Now, if you give me all that time then I can say that certain things took place. [Emphasis added.]
The witness was questioned on redirect examination by counsel for the importer, eliciting .the following answers:
RQ. Did you also state in 1960 as to the offered — did you also give information, or testify as to the offered prices of these sweaters during the period June to December 1957 in the hearing held in September of 1960? A. Yes.
RQ. Do you adopt the answers you gave now? A. No, that is a point that I wanted to say a litle while ago, that is, if I had known at that time that the time period of June to December was so important I don’t think I would have replied as I did in 1960. I think I would have said, “I am not sure,” or “I don’t remember.” But I tried to accommodate the question, and that is why I answered the way I did. [Emphasis added.]
*8 Mr. Lawerence Ginsberg, vice president and chief buyer for New York Merchandise Company whose duties included the buying of ladies’ sweaters from Japan, was called on behalf of appellee. It will be recalled that Mr. Wada testified in the incorporated case and in the present case that he had offered sweaters to Mr. Ginsberg’s company. Ginsberg testified that he did not conduct any business with Tokyo Marusangumi, Marusan Knitwear Export Corporation, or Jiro Wada during the period June to December 1951. He had no recollection of receiving offers from the above sources for the purchase of ladies’ sweaters of either 75 percent lamb’s wool, 25 percent silk or 80 percent lamb’s wool, 20 percent Angora blends during the period stated, nor had he ever received offers of any styles represented by appellant’s exhibits, nor was he ever offered sweaters in the 75 percent lamb’s wool, 25 percent silk blend by anyone; and that this particular blend was unique. Ginsberg stated that all offers of sweaters would come to his attention but to the best of his recollection he had no knowledge of ever receiving any offers from the sources named.
Mr. Wada had named the Otto Gerdau Company as one to which he had submitted offers of his merchandise. Mr. E. L. Reichard, manager of the sweater division of this company, was called by appellee. He testified that he never received any offer from Wada or the companies mentioned; that he did receive a letter from Wada in December 1957 stating that he was coming to the United States to discuss sweaters but he never came to see Reichard who was the person solely responsible for the purchase of sweaters.
Mr. Paul Piatoff, buyer for the A.M.C. Wholesale Corporation, refuted Mr. Wada’s testimony relative to the offering of sweaters as did Miss Betty Peluso, a buyer for the same company.
Mr. H. K. Lowe, connected with China Consolidated Corporation, stated that he did business with Marusan Knitwear Company during the period from June to December 1957; that he had a verbal exclusive arrangement to buy sweaters from Mr. Wada, with the exception Mr. Wada could offer merchandise to Minkap. Mr. Lowe was definite that Mr. Wada did not offer to him the 75 percent lamb’s wool, 25 percent silk blend sweaters either in the name styles or by number.
We have examined the testimony of the remaining witnesses but do not glean therefrom sufficient material substance to produce a determinative impact on the ultimate resolution of the issue here presented.
As did the tribunals below, we regard as the crucial factor the weight to be attributed to Jiro Wada’s over-all testimony and the impact thereon of the testimony of the other witnesses who categorically refuted Mr. Wada’s statements relating to vital aspects of appel *9 lant’s case. His testimony in tlie incorporated case was direct and clear relative to dates, prices and the making of offers of specific merchandise. He was clear as to yam compositions and offers to named prospective purchasers for the period involved, embracing June of 1957 through December of that year. He was positive in his statement that he personally came to this country to meet importers whom he named and to whom offers were made. Mr. Wada himself contradicts this testimony in the present case when he stated in 1960 that he appeared on behalf of his company and not as an individual — a strong indication that the offers were not made personnally by him. He was asked on redirect examination if he made these offers personally. He answered, “No, I had some people under my staff, and besides, I was not always in this country. I was working sometimes here and sometimes in Japan.” He stated that when he testified in the incorporated case to personally making offers, he was referring to offers made by his company and reported Toy other persons. He contradicted himself with respect to the dates when such offers were allegedly made. While he was positive in his testimony in the incorporated case that he made the offers between June and December 1957, in the present case he said that his answers with respect thereto would be different. We do not think that this self-refutation can be attributed to the attrition of time on memory when he himself stated that it was due to his realization of the importance of his testimony as to dates of offers, by whom made, style names used and prices quoted.
In the incorporated case, Wada unequivocally stated that he offered the sweaters under the various style names at specific prices. In the present case, he testified that he did not offer the sweaters under the style names.
When these patent inconsistencies, self-repudiations and irreconcilable contradictions with which the record teems are considered, with the added impact of appellee’s witnesses who testified that neither Wada nor the firms which he represented made offers of the subject merchandise during the period from June to December 1957, there is little substance left of the case upon which appellant relied in the incorporated record.
As stated by the Customs Court:
There were conflicts of testimony between Mr. Wada and Mr. Wada, and between Mr. Wada and other witnesses. Judge Richardson had the opportunity, which we lack, to observe the demeanor of Mr. Wada and of other witnesses. His evaluation of the oral testimony he heard rests in part on considerations not fully reviewahle from the cold record. He stated that he was required “to conclude that the testimony of Jiro Wada is inconclusive and unconvincing in ■the matter of the sweater offerings.” The testimony of plaintiff’s rebuttal witnesses was not more enlightening. * * *
*10 . We have examined the oases cited by appellant relative to the presumption of correctness where export value is claimed as a basis of .appraisement but was not adopted by the appraiser. In our view they are not apposite here.
The principle of law with respect to the proof required in reap-praisement cases is well settled. In Hill Brown Corp. v. United States, 54 CCPA 99, C.A.D. 917, this court stated :
A party attacking an appraisal value Las the two-fold burden of proving that the appraised value is incorrect and that his asserted value is correct. Kenneth Kittleson v. United States, 40 CCPA 85, C.A.D. 502. * * *
The court below concluded that the evidence of record does not overcome the presumption of correctness attaching to the appraised values .and that the cost of production, as that value is defined in 19 USCA 1402(f) (Section 402(f) Tariff Act of 1930 renumbered 402a (f) by the Customs Simplification Act of 1956) is the proper basis for determining the value of the involved merchandise.
We find that the record taken as a whole substantially supports the conclusion of the Customs Court. We, therefore, affirm that judgment.
Accordingly, Appeal 5268 is dismissed and the judgment in Appeal 5262 is affirmed.

 56 Oust. Ct. 822, A.R.D. 209.

Idem: 54 Cust. Ct. R.D. 10972.