(R.D. 11345)

STANDARD BRANDS PAINT CO., INC. *v.* UNITED STATES

(Decided August 8, 1967)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*Carl Eardley*, Acting Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

WILSON, Judge: The imported merchandise consists of several items of glazed ceramic tile which were exported by the shipper, Allied Trading Co., of Nagoya, Japan, hereinafter referred to as Allied. The seller is Nippon Tile Industrial Co., Ltd., hereinafter referred to as Nippon Tile of Tajimi City, Japan. The merchandise was exported from Nagoya on November 6, 1964, in R65/19167, and on April 19, 1965, in R65/16558.

The invoices state the packed Japanese yen unit ex-factory prices, the total ex-factory price, and certain inland and other charges referred to *infra*, the f.o.b. Japan net price, as well as a purchasing agent's commission of 5 percent. The "Total F.O.B. Japan" price is also shown in Japanese yen. The total Japanese yen equivalents are also shown in United States currency at the specified exchange rate of $1 equals yen 360.

Entry was made in R65/16558 at the total "F.O.B. Japan" price, *less* claimed nondutiable charges referred to *infra*, and *less* purchasing agent's commission of 5 percent. Entry was made in R65/19167 at the total "F.O.B. Japan" price *less* the same claimed nondutiable charges and *less* purchasing agent's commission of 5 percent. This entry also claimed a deduction for a "current unit price" less than the unit invoiced price which is not further explained in the entry, nor in the record by proof or in plaintiff's brief. Accordingly, the said claimed *current unit price* need not be further considered in arriving at dutiable value.

Appraisement in both entries is stated as follows: "Appraised at invoiced unit values plus items X, packed." The items marked "X" are shown as "Inland freight (factory to Nagoya port w/h), Storage, Hauling and lighterage, Insurance premium (factory to on board vessel) [and] Petties." The item of 5 percent purchasing agent's com-

mission is not included in the appraised value and is not the subject of controversy herein.

In addition to plaintiff's motion, granted without objection, that these appeals be consolidated for trial and that the official papers be received in evidence without being marked, counsel agreed at the trial that said merchandise (a) does not appear on the final list published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, which was promulgated pursuant to the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165; (b) that the basis of appraisal should be export value as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, *supra;* and (c) that "the only issue involved herein is whether or not these inland charges which are defined on the invoice[s] as inland freight, storage, hauling and lighterage, insurance premium, factory to boarding vessel and petty are part of dutiable value." (R. 2, 3.)

Both parties agree that the correct statutory basis of value is the export value as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, which reads in pertinent part:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States * * *.

Plaintiff contends that such export value is the ex-factory invoice unit value exclusive of any additional charges and that the appraisement is severable. Defendant's brief does not argue or dispute the question of severability but contends that plaintiff has failed to overcome the presumption of correctness attaching to the appraised values herein.

Based upon the agreement of counsel, the *per se* unit invoiced value of each imported item is correct, as is also the invoiced price for each of the invoiced charges. Plaintiff's position is that such invoiced charges are not part of the dutiable value, while defendant claims that they are part of the dutiable value.

The plaintiff offered the testimony of two witnesses, Kaithi Kato, who, for 15 years, has been the export manager of Nippon Tile, and Abraham Bressler, who, for 15 years, has been the import manager of Standard Brands Paint Co., Inc., the plaintiff and importer of the ceramic tile here involved. The defendant offered a report dated September 25, 1963, at Tokyo, Japan, made by William G. Powell, Customs Representative. The pertinent evidence will be referred to, *infra.*

Mr. Kato testified that he supervises and controls the export sales of Nippon Tile; sets export prices and is familiar with the involved merchandise manufactured by his firm and has sold merchandise to the plaintiff for about 3½ years through their Tokyo agents, the merchandise being delivered "at ex-factory basis"; that Nippon Tile freely offers its merchandise to customers on "Ex-factory basis, ex-godown basis, f.o.b. basis." Plaintiff always purchased at ex-factory basis. There is no agreement limiting to whom Nippon Tile may sell its merchandise (R. 4–6).

Under cross-examination, Kato testified that he gives all customers a choice of purchasing at ex-factory and at f.o.b. basis; that some buy at one or the other basis, as the customer wishes; that the same type merchandise but a different tile as sold to plaintiff is also sold to trading companies in Japan, and to two companies in the United States who purchase on an f.o.b. basis, that being their selection. He does not have a printed pricelist. Plaintiff, at the time of trial, was the only United States customer buying at ex-factory prices.

Mr. Bressler testified that plaintiff retails paint and paint products and imports items including glazed ceramic tile from Japan; that as import manager his duties include finding items that can be purchased; sending them over to Japan for duplication; seeing the documents through customs; opening letters of credit and taking care of the entire import program. He stated that purchases are only made through Allied, his firm's agent in Japan, and that an agency agreement is on file with customs (R. 10, 11). He testified that the agent's duties are (R. 11):

The agent finds the items for us, duplicates items that we sell, obtains quotations for us, sends us samples, quotations and makes inspections, takes care of documentation, takes care of paying freight charges, storage charges, handling charges, and acts as our agent between ourselves and the manufacturers.

Bressler also testified that *all* purchases are made on an ex-factory basis; that he is familiar with the merchandise here involved, and that

I bought it, I placed the orders; I checked the documents; I submitted them to Customs. I have seen the items themselves, and I am very familiar with them. (R. 12.)

He confirmed that he had been doing business with Nippon for about 3½ years on an ex-factory basis and that he had no exclusive arrangement with them (R. 12).

Under cross-examination Bressler testified that he is the one who requested the agent to negotiate for the purchase of the merchandise; that he has not seen any pricelists of Nippon Tile, and that prices are submitted to him by the agent; that he asked the agent to purchase on ex-factory basis and is aware that purchases could be made at an f.o.b.

basis; that he was not given a better price because he bought ex-factory. He does not know at what prices Nippon Tile sold to others (R. 12, 13). He testified, R. 13:

I know I got as good price as in the market because we are very competitive.

An examination of defendant's exhibit A, dated September 25, 1963, discloses that the customs representative making the report interviewed Mr. S. Kozima (his title and duties are not disclosed, nor is he further identified), Nippon Tile Industrial Co., Ltd., from whom he received certain information on September 19, 1963. The merchandise in the current two appeals for reappraisement was exported on November 6, 1964, and April 19, 1965. Thus, the report predates these exportations by at least 1½ years and are, therefore, too remote to qualify as probative evidence in the absence of evidence bringing that investigation up to the dates of exportation here involved.

A summary of the oral evidence discloses that Nippon Tile freely offers its merchandise to *all* customers and the customer has the discretion to purchase either at an ex-factory, or ex-godown, or f.o.b. basis; that some purchase f.o.b. while this importer for 3½ years purchased on an ex-factory basis, without receiving any better price and that there is no agreement limiting Nippon Tile to whom it may sell.

Accordingly, on such record, including the agreement of counsel, the merchandise is "freely sold" pursuant to the requirements of section 402 (b), as amended, *supra*, there being no question as to principal market, usual wholesale quantity, or ordinary course of trade, for exportation of the involved merchandise to the United States.

The court notes that in the recent case, decided May 11, 1967, of *United States* v. *Chadwick-Miller Importers, Inc., et al.*, 54 CCPA 93, C.A.D. 914, the facts of record showed that the importers' invoices indicated the so-called "ex-factory" price; and that "the appraiser added the inland freight, shipping, and like charges to make the total correspond to an f.o.b. price, port of shipment." The court stated that "The correctness of that action is the matter in dispute here. Both the trial judge and the Appellate Term found for the importers and held that the disputed charges are nondutiable."

The record in the above cited case also showed that buying commissions were returned as nondutiable and not added by the appraiser to the invoice prices in arriving at dutiable value. The buying commission, as here, is not in issue in the cited case. The affidavits of two managers of Japanese firms which acted as purchasing agents for the importers stated, in summary effect

* * * that their respective firms placed orders with various manufacturers on behalf of a number of importers; that the invoices pre-

pared by them stated separately, in each instance, the actual ex-factory price and the transportation, shipping, and other charges; that the manufacturers were paid nothing in addition to the ex-factory price; and that the manufacturers with whom they deal are, and have always been, willing to sell ex-factory since they prefer to have the buyer's agent handle the paper work involved in arranging for transportation from the factory and loading of the goods for export.

The Court of Customs and Patent Appeals stated that the trial court applied the so-called separability rule and concluded that the export value was the invoiced ex-factory prices, exclusive of the added charges, and that the Appellate Term, Third Division, affirmed the decision and incorporated its findings of fact and conclusions of law by reference. The Court of Customs and Patent Appeals also stated that

In our view the court below was right in applying the separability doctrine and, hence, the asserted deficiency in the importers' proof was supplied by the presumption of correctness attaching to the unchallenged items.

* * * * * * *

We hold that the separability rule applies and that the importers may challenge the propriety of adding inland freight and loading charges and at the same time rely on the presumption of correctness attaching to the ex-factory prices.

On a record substantially the same herein, as in the *Chadwick-Miller* case, *supra*, the foregoing expressions by the Court of Customs and Patent Appeals are equally applicable in the case at bar. The result therein, in effect holding that the export values are the invoiced unit ex-factory prices exclusive of the added charges, should be adopted herein.

Defendant's brief, page 5, contends that as actual sales to companies in the United States at f.o.b. prices have been established, that "the statement of a witness that the merchandise is also offered to other customers at 'ex-factory' prices or others must be disregarded in fulfilling the requirement of Section 402(b), *supra*," citing *Louis Goldey Co., Inc.* v. *United States*, 55 Cust. Ct. 759, A.R.D. 196. That case is distinguishable.

In said *Goldey* case, the evidence showed that Goldey agreed his company *usually purchased on an f.o.b. vessel basis*, though he had the *option* of purchasing at an ex-factory price, and that "the consular invoice contained a statement that *no sales were made ex-factory*" [emphasis added]. In the case at bar, the record clearly shows that plaintiff actually *always* purchased the merchandise during a 3½ year period *at an ex-factory* price. That basis was open to all purchasers. An examination of the consular invoices herein discloses the statement that *sales have been made at an ex-factory price*. Moreover, the

court file in each of these appeals contains an invoice from Nippon Tile to Allied which shows *only* an ex-factory unit price. Each file also contains an invoice from Allied to plaintiff of those *identical* invoiced unit ex-factory prices, plus the various charges heretofore specified. It will be recalled that the official papers are in evidence without being marked (R. 3). Accordingly, on the basis of these different facts, the *Goldey* case, *supra*, is distinguishable and does *not* control the decision herein.

It is of interest to note the decision in *United States* v. *Tapetes Luxor S.A. et al.*, decided June 2, 1967, in 54 CCPA 116, C.A.D. 921, wherein customers had the *option* to purchase at prices f.o.b. the factory at Texcoco, Mexico, or at prices f.o.b. Laredo, Texas. The court stated:

There is substantial evidence to support the conclusion that the United States customers could have purchased the merchandise at f.o.b. Texcoco prices with the option to designate Export Shipping or some other freight forwarder to handle the transportation from Texcoco to the United States. * * *

\* \* \* \* \* \* \*

There being no basis for disturbing the factual conclusion that United States customers could have purchased the goods f.o.b. at Texcoco at the corresponding prices, it is apparent that the 5 percent commission paid to Export Shipping was not a part of either a statutory cost of production or the export value of the imported merchandise.

On somewhat similar facts in the case at bar, the inland freight and other charges, as well as the 5 percent commission as invoiced herein, which was allowed by the appraiser, are *not* a part of the export value of the imported merchandise.

On the record in the case at bar, I hold that the separability rule applies; that plaintiff may properly challenge the propriety of adding the inland freight and other charges and that plaintiff may at the same time rely on the presumption of correctness attaching to the ex-factory unit prices adopted by the appraiser. Thus, on the record, plaintiff has made out a *prima facie* case.

The court makes the following findings of fact:

1. The merchandise covered by these consolidated appeals for reappraisement consists of several items of glazed ceramic tile exported from Japan on November 6, 1964, in R65/19167 and April 19, 1965, in R65/16558.

2. Appraisement was made on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, at the undisputed ex-factory unit prices, as expressed on the invoices, plus the amounts as indicated on the invoices for inland freight (factory to Nagoya), storage, hauling and lighterage, insurance premium, factory to on board vessel, and petties.

3. The involved merchandise was purchased by the importer from the manufacturer through its buying agent at unit ex-factory prices which unit prices included none of the above inland freight or other charges.

4. On or about the dates of exportation of the involved merchandise, such or similar merchandise was freely sold or offered for sale to all purchasers in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the invoice unit ex-factory prices, net, packed.

As conclusions of law, the court holds:

1. Export value, as defined in section 402(b), Tariff Act of 1930, as amended, *supra*, is the proper basis for appraisement herein.

2. Said export value is represented by the invoice unit prices, exclusive of the invoiced charges for inland freight, factory to Nagoya port w/h, storage, hauling and lighterage, insurance premium, factory to on board vessel, petties, and purchasing agent's commission of 5 percent.

Judgment will issue accordingly.