**PACIFIC WOOD PRODUCTS COMPANY (JAMES G. WILEY CO.)**

v.

**UNITED STATES.**

**Reappraisements R63/12296 and R63/12297.**

United States Customs Court.

Oct. 10, 1967.

Glad & Tuttle, San Francisco, Cal. (Edward N. Glad, San Francisco, Cal., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Mollie Strum, trial attorney), New York City, for defendant.

WILSON, Judge:

These two appeals for reappraisement were consolidated for purposes of trial. Pacific Wood Products Company (hereinafter called Pacific) of Los Angeles, California, is the importer of record. That firm financed the purchase of the imported merchandise for Carlson Furniture Industries, Inc. (hereinafter called Carlson), of Gardena, California. James

G. Wiley Co. of Los Angeles, California, is a customhouse broker.

The imported merchandise consists of armchair and settee frames which were exported from Yokohama, Japan, by the manufacturer-seller, K. K. Toda Mokko Sho (hereinafter called Toda Mokko) of Tokyo, Japan, on June 9, 1963, in R63/12296 and on May 22, 1963, in R63/12297.

In R63/12296, 100 armchair frames No. 1808 were entered at the invoiced total f. o. b. Yokohama value of $810, less invoiced inland freight Ohme Plant to Yokohama warehouse of $12, and less invoiced shipping charges of $28. The total entered value is $770. The merchandise is invoiced at a unit price of $7.70 which includes packing in the ex-factory price. This merchandise was appraised at $8.10 each, net packed, equal to the f. o. b. Yokohama invoiced unit price which includes packing, inland freight and shipping charges. The total packing charge is invoiced at $50.

In R63/12297, 300 armchair frames No. 1508 were entered at the invoiced total f. o. b. Yokohama value of $1,500, less invoiced inland freight Ohme to Yokohama warehouse of $30, and less invoiced shipping charges of $51. The total entered value is $1,419. The merchandise is invoiced at a unit price of $4.73 which includes packing in the ex-factory price. This merchandise was appraised at $5 each, net packed, equal to the f. o. b. Yokohama invoiced unit price which includes packing, inland freight and shipping charges. The total packing charge is invoiced at $99.

Also in R63/12297, 150 settee frames No. 1512 were entered at the invoiced total f. o. b. Yokohama value of $1500, less invoiced inland freight Ohme to Yokohama warehouse of $30, and less invoiced shipping charges of $60. The total entered value is $1410. The merchandise is invoiced at a unit price of $9.40 which includes packing in the ex-factory price. This merchandise was appraised at $10 each, net packed, equal to the f. o. b. Yokohama invoiced unit price which includes packing, inland freight and ship-ping charges. The total packing charge is invoiced at $90.

At the trial, counsel stipulated (a) that the imported merchandise is not on the final list published by the Secretary of the Treasury in 93 Treas.Dec. 14, T.D. 54521, promulgated under the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165; (b) that export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, supra, is the proper basis for appraisement; and (c) that the only issue involved herein is whether or not the inland freight and shipping charges, supra, are properly included as part of the dutiable value of the imported merchandise.

Section 402(b) of the Tariff Act of 1930, as amended, supra, reads as follows:

SEC. 402. VALUE.

\*    \*    \*    \*    \*    \*

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The plaintiff offered the oral testimony of one witness, Norman Rose, and introduced two exhibits in evidence. The defendant offered no evidence.

Mr. Rose testified that he has been the general manager of Carlson since April 1963 and that the firm imports and assembles furniture; that prior thereto he was also in the import furniture field. At Carlson's he is "charged with the administration of the company from within,

including financing letters of credit, handling of import items" (R. 5). Carlson financed its operations from April 1963 to November 1, 1965, through Pacific "letters of credit in the credit line, using Pacific Wood Products purchase orders" (R. 6). He said this was done because Carlson was a new concern which succeeded a prior corporation, and there was no basis for lines of credit to be issued to Carlson; that, when an order was to be placed, Pacific allotted a purchase order number to Carlson, which in turn used it to enter the order for the merchandise; that in 1963 such purchase order would go to the Tokyo office of Pacific and they in turn would give it to one of three or four factories in Japan from which Carlson purchased furniture parts. He also stated that the method of purchase was the same among these three or four factories (R. 6–7).

Mr. Rose further testified that the entries herein were made after he joined Carlson. They were partial shipments against much larger quantities of similar merchandise ordered by the predecessor corporation on purchase order No. 6159, dated October 22, 1962, and by Carlson purchase order No. 6925, dated March 20, 1963. Copies of these two purchase orders are marked plaintiff's collective exhibit 2. They are signed by persons prior to Rose's employment by Carlson (R. 8–9). He stated that his firm was receiving ex-factory appraisements on shipments of two other factories which are not involved in the two cases under consideration (R. 10–11).

Under cross-examination, Mr. Rose stated that he did not know which charges the seller in these appeals paid and that "We did not pay the inland charges; we paid them to this factory" in paying the total amount which included the inland freight and shipping charges, and "We did not pay for them separately" (R. 11). He also testified that the seller drew drafts against letters of credit in the amount of the f. o. b. Yokohama unit price, which were paid. He stated that

"F. o. b. Yokohama means that that is the price on board at Yokohama" which "includes the shipping charges from the factory to the ship, to the port." He has seen other invoices such as that in R63/12297 invoicing furniture or furniture parts from Toda Mokko to Carlson at f. o. b. Yokohama prices (R. 12–13).

Although he stated under cross-examination that he paid directly to Toda Mokko "Through drafts, letters of credit," he stated under redirect examination that Carlson paid directly to Pacific Wood Products, Tokyo, for these shipments (R. 13–14).

Two purchase orders received in evidence as exhibit 2 state the unit price "FOR VESSEL," and upon both, among other statements, is the following:

SPECIAL NOTE: THESE ITEMS ARE PURCHASED AT EX FACTORY PRICES BUT FOR CONVENIENCE IN COMMUNICATIONS ETC THEY ARE LISTED AT FOB VESSEL PRICES. HOWEVER, ALL INVOICES, SHIPPING PAPERS ETC ARE TO SHOW BREAKDOWN OF EX FACTORY, PACKING, TRANSPORTATION FROM PLANT TO PORT AND BROKERAGE FEES.

Plaintiff's exhibit 1 is an affidavit sworn to on May 27, 1966, before the American Consul at Tokyo in which Shinichi Shiozawa[1] alleges that he has been the sales manager for K. K. Toda Mokko Sho, the manufacturer and exporter, for the last 4 years; that he has been with that firm for 14 years and worked in sales because of his ability to read, write and understand English in conducting business with the United States Government procurement agencies and foreign importers; that he participated from the beginning of business transactions with Pacific and Carlson "in coordinating with the President of my firm in cost and estimation for export items"; that, therefore, he has personal knowledge of sales practices and policies of his firm and of the selling prices of various wooden furniture and parts sold in a knocked

---

[1]. He signed the "Purchase Declaration[s]" in the "Special Customs Invoice[s]" and also the packing lists.

down condition for export to the United States.

The affiant states that his firm has not offered the design of furniture and parts exported to Pacific for the account of Carlson to others but that his firm is free to and does offer other items of furniture which do not conflict with the design of furniture and parts sold to Carlson "to any others who care to buy." He alleges that his firm deals directly with foreign importers such as Pacific and Carlson and does not deal through any agent. He states that, during May and June 1963 and thereafter, his firm offered its wood furniture and parts "at either an ex-factory of [sic] an F.O.B. price, as my firm will for the convenience of the foreign importer paid [sic] the inland freight and other applicable charges to F.O.B. Japan port. The affiant states that, during May and June 1963, the ex-factory prices at which his firm *offered* "its wooden furniture and parts to Pacific Wood Products Co. for the account of Carlson Furniture Industries, Inc., along with the packing charges, inland freight, and other charges to reach an F.O.B. Yokohama price are attached," and that the prices did not vary during the period because of quantity purchased.

The following is a comparison of the offered prices, as stated in the paper attached to exhibit 1, and a calculation based upon the actual sales quantity and price per imported article as invoiced in the cases at bar:

Item No. 808 invoiced as No. 1808 in R63/12296 (armchair frames)

| | As stated in exhibit 1, each | As calculated from invoice data each |
|---|---|---|
| Ex-Factory | $7.32 | $7.20 |
| Packing | .34 | .50 |
| Inland Freight | .09 | .12 |
| Shipping Charges | .25 | .28 |
| Total offered price | $8.00 | $8.10 Invoice price f. o. b. Yokohama |

Item No. 1508 invoiced same number in R63/12297 (armchair frames)

| | | |
|---|---|---|
| Ex-Factory | $4.39 | $4.40 |
| Packing | .34 | .33 |
| Inland Freight | .09 | .10 |
| Shipping Charges | .18 | .17 |
| Total offered price | $5.00 | $5.00 Invoice price f. o. b. Yokohama |

Item No. 1512 invoiced same number in R63/12297 (settee frames)

| | | |
|---|---|---|
| Ex-Factory | $8.78 | $8.80 |
| Packing | .68 | .60 |
| Inland Freight | .18 | .20 |
| Shipping Charges | .36 | .40 |
| Total offered price | $10.00 | $10.00 Invoice price f. o. b. Yokohama |

———◆———

Actual sale price more accurately reflects the true market value than even a *bona fide* offer. F. W. Kuehne Co. v. United States, 12 Cust.Ct. 386, 389, Reap.

Dec. 5985; affirmed in United States v. F. W. Kuehne Co., 14 Cust.Ct. 356, Reap. Dec. 6110.

It will be observed that the appraisements indicated, supra, include the *invoiced* packing charges as well as the *invoiced* inland freight and shipping charges. Defendant makes no specific claim that the amounts of these charges are incorrect. It may, therefore, be deemed that said charges, as invoiced, are correct and that they apply to the respective items of merchandise in these two consolidated appeals for reappraisement.

As heretofore, noted, the only issue by agreement of counsel, is whether or not the inland freight and shipping charges are part of the dutiable value.

The defendant contends that "the plaintiffs have offered very inadequate proof." Plaintiff's evidence clearly shows that the purchase orders for the imported merchandise are, among others, kept in the "regular course of business" (R. 7–9). They contain prices "FOB VESSEL" and state that the merchandise is purchased at ex-factory prices but for convenience in communications they are listed at f. o. b. vessel prices, and that invoices and shipping papers are to show the breakdown of ex-factory, packing, transportation and brokerage fees. The papers attached to exhibit 1 show "Shipping Charges (Brokerage)." The invoices before the court comply with the terms of the orders, except that the word "Brokerage" is not indicated and the $8.00 price stated in the order for item No. 808 is shown as $8.10 and the item number is shown as No. 1808 (see invoice in R63/12296). These differences are inconsequential.

The affiant in exhibit 1 has been employed in sales for the exporter for 14 years. He served the last 4 years as sales manager. He reads, writes and understands English and participated "from the very beginning in the business transactions with Pacific Wood Products Co. and Carlson Furniture Industries, Inc." He alleges *personal knowledge* of the sales practices and policies of his firm and of the selling prices of wooden furniture sold to the United States. He is, therefore, well qualified with respect to selling his firm's furniture, and their business practices. He states that, during May and June 1963 and since then, his "firm has offered its wood furniture and parts at either ex-factory of [sic] an F.O.B. price, as my firm will for the convenience of the foreign importer paid [sic] the inland freight and other applicable charges to F.O.B. Japan port."

Mr. Rose testified that the seller drew drafts for the f. o. b. price against letters of credit (R. 12) and that Carlson paid directly to Pacific of Tokyo (R. 13–14). Mr. Rose had *personal knowledge* of the arrangements made for the purchase of the imported merchandise and he produced from his firm's files, kept in the ordinary course of business, orders (collective exhibit 2) signed by his predecessor. He, therefore, had knowledge of the items ordered and he was familiar with the merchandise shipped by the exporter pursuant to those orders and received by his firm while he was in their employ, which merchandise is here involved.

The knowledge derived by the affiant in exhibit 1 is as an employee in the sales department for 10 years and as sales manager for 4 years with the exporter. He, therefore, is personally familiar with the facts he alleges. In Fashion Ribbon Co., Inc. v. United States, 58 Cust.Ct., R.D.11314, decided May 24, 1967, the court stated:

* * * Similar affidavits by persons having knowledge of facts personally and from the books and records of the manufacturer have been held competent to establish a *prima facie* case. United States v. North American Asbestos Corp., 48 CCPA 153, C.A.D. 783; Montgomery Ward & Company v. United States, 51 Cust.Ct. 431, Reap.Dec. 10612; Chicago Bird & Cage Co. v. United States, 51 Cust. Ct. 456, Reap.Dec. 10625.

The cases cited by defendant, Brooks Paper Company v. United States, 40 CCPA 38, C.A.D. 495, and United States

v. Fisher Scientific Co., 44 CCPA 122, C.A.D. 648, are not apropos herein, Those cases involved the question of proof of "usual wholesale quantities." Here counsel agreed that the sole issue related to whether or not inland freight and shipping charges are part of dutiable value. This agreement eliminates the necessity for plaintiff herein to establish the various elements of statutory export value which include the question of usual wholesale quantities.

On the record, the orders, collective exhibit 2, and the affidavit, exhibit 1, the importer had the choice to purchase at *either* ex-factory or f. o. b. Japan port. The invoices which are in evidence without being marked (R. 13) show the ex-factory unit price which includes the invoiced packing charge; the invoices also show the charges for inland freight and shipping separately.

In the case of Albert Mottola, et al. v. United States, 46 CCPA 17, C.A.D. 689, the court followed the doctrine exemplified by its decisions in United States v. Heffernan Paper Co., 13 Ct.Cust.Appls. 593, T.D. 41454; United States v. Traders Paper Co., 14 Ct.Cust.Appls. 293, T.D. 41909; United States v. Zellerbach Paper Co., 28 CCPA 303, C.A.D. 159; and United States v. Paul A. Straub & Co., Inc., 41 CCPA 209, C.A.D. 553. The court stated, page 19:

* * * We concluded that, since there was no showing the merchandise could ever be purchased at the invoice price less freight, regardless of where the purchase was made, the freight charges must be regarded as bound up in and forming an integral part of the purchase price. Unless that decision is to be overruled, we must reach a similar conclusion here.

In the very recent decision in United States v. Tapetes Luxor S. A. et al., 54 CCPA, C.A.D. 921, decided June 2, 1967, the court considered whether a 5 percent addition to the f. o. b. prices was properly included in evaluating certain merchandise on the basis of cost of production, section 402(f) of the Tariff Act of 1930, and on the basis of export value, section 402(b) of said act, as amended by the Customs Simplication Act of 1956, supra. The court stated:

The Appellate Division found that the notice regarding alternative methods of arranging purchases amply substantiates the conclusion that the purchasers of the imported rugs had the option of buying at f. o. b. Texcoco prices as well as f. o. b. Laredo, and held that it must be considered that Export Shipping was acting on behalf of the purchasers "regardless of whether or not Export Shipping was a wholly owned subsidiary of the manufacturers." The Appellate Division further observed that all of the importations were appraised on the basis of f. o. b. Texcoco prices and that the importers are challenging only that portion of the appraisement which adds to those prices the 5 percent commission charged by Export Shipping. It held that such an appraisement is deemed to be separable and that a party challenging only the additional charge may rely upon the presumption of correctness inherent in the appraiser's return with respect to all other unchallenged items.

With respect to the rugs appraised on cost of production, the Appellate Division concluded that the forwarding fee of Export Shipping was not part of the manufacturer's cost of producing its goods. As to the goods subsequently exported and appraised at export value, the Appellate Division held that the services were, in effect, an accommodation available to the buyer at his option and that the costs were not properly part of the export price.

*	*	*	*	*	*

There is substantial evidence to support the conclusion that the United States customers could have purchased the merchandise at f. o. b. Texcoco prices with the option to designate Export Shipping or some other freight forwarder to handle the transportation from Texcoco to the United States.
*	*	*

* * * * * *

There being no basis for disturbing the factual conclusion that United States customers could have purchased the goods f. o. b. at Texcoco at the corresponding prices, it is apparent that the 5 percent commission paid to Export Shipping was not a part of either a statutory cost of production or the export value of the imported merchandise.

The above case is cited in Standard Brands Paint Co., Inc. v. United States, 59 Cust.Ct., R.D.11345, decided August 8, 1967.

The expressions of the court of appeals in the *Tapetes Luxor* case, supra, are applicable to the facts in the case at bar. Plaintiff, accordingly, has made out a *prima facie* case.

The court makes the following findings of fact:

1. The imported merchandise consists of armchair and settee frames exported from Japan on June 9, 1963, in R63/12296 and on May 22, 1963, in R63/12297.

2. Counsel agreed that export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165, is the proper basis for ascertaining the value of the imported merchandise.

3. Appraisement was made on the basis of export value, supra, at the f. o. b. Yokohama invoiced unit price which included the undisputed invoiced ex-factory price, the undisputed invoiced packing, inland freight and shipping charges.

4. The involved merchandise was purchased by Carlson Furniture Industries, Inc., through its financial agent, Pacific Wood Products Company, at unit ex-factory prices which included invoiced packing charges but did not include invoiced inland freight and shipping charges.

5. On or about the dates of exportation of the involved merchandise, such or similar merchandise was freely sold or offered for sale to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at *either* an f. o. b. Japan port basis or at the following unit ex-factory prices which include packing but do not include inland freight and shipping charges:

| Reap. No. | Item No. | | Price each, packed |
|---|---|---|---|
| R63/12296 | 1808 Armchair | frames | $7.70 |
| R63/12297 | 1508 " | " | $4.73 |
| R63/12297 | 1512 Settee | " | $9.40 |

As conclusions of law, the court holds:

1. That export value as defined in section 402(b) of the Tariff Act of 1930, as amended, supra, is the proper basis for the ascertainment of the value of the imported merchandise.

2. That said export value is represented by the price stated in finding of fact number 5, supra, for each of the respective imported items, exclusive of inland freight and shipping charges.

Judgment will issue accordingly.