**STANDARD BRANDS PAINT CO., Inc.**
v.
**UNITED STATES.**
R.D. 11628; Reappraisement R65/23153.

United States Customs Court.
Feb. 13, 1969..

Glad & Tuttle, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Sheila N. Ziff and Velta A. Melnbrencis, New York City, Trial Attys.), for defendant.

WILSON, Judge:

This appeal for reappraisement is limited by plaintiff to the 804 pieces in three sizes of lauan wood shutter doors, as shown in the invoice, which were manufactured by Toyo Door Industries (hereinafter Toyo) of Tokyo, Japan. This merchandise was exported on July 19, 1965 from Yokohama, Japan, by Allied Trading Co., Ltd. (hereinafter Allied) of that city, the importer's exclusive agent in Japan.

Counsel stipulated that this merchandise is not listed on the so-called Final List, 93 Treas.Dec. 14, T.D. 54521, and that the proper basis for appraisement is export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165. It was further stipulated that the only issue herein is whether or not the inland charges are part of the dutiable value.

The following statutes are considered:

Section 402(b) of the Tariff Act of 1930, as amended, *supra*, provides:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at

which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 2633 of Title 28, United States Code, provides:

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

The plaintiff contends that on or about the date of exportation of the involved doors, such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the invoice unit ex-factory prices, net packed. In support of that contention the plaintiff offered the oral testimony of Abraham Bressler, the plaintiff's import manager for 15 years, and documentary exhibits 1 to 5 inclusive, as well as the official court papers which were not marked.

The defendant offered neither oral nor documentary evidence, and contends that plaintiff has failed to overcome the presumption of correctness attaching to the appraised values herein.

Mr. Bressler testified that his firm deals in paint products and decorative items; that his duties as import manager are to find items the firm would like to sell; to obtain samples and quotations and place orders. He arranged for the shipment of the merchandise and followed it through to liquidation. He made trips to Japan, Taiwan, Hong Kong and other places in the Far East to find new sources of supply. Mr. Bressler also testified that he placed the

order for the involved merchandise, received the confirmation and shipping documents. These latter documents were delivered to the customs broker for submission to the customs officials. The witness further stated that he has been doing business with Toyo for about 3 years, or ever since Allied, plaintiff's exclusive agent in Japan, started transacting business with Toyo for plaintiff. He produced a carbon copy of his order for the involved merchandise (exhibit 2) which had been kept in the regular course of business. He testified that when such orders are sent to plaintiff's agent in Japan he would receive a confirmation. Exhibit 3 was such a confirmation.

Mr. Bressler also testified that plaintiff's collective exhibit 4 is made up of orders placed with Toyo and collective exhibit 5 represents confirmations of said orders. All original confirmations and copies of orders were submitted to the United States customs officials. There is no agreement, oral or written, with Toyo for the exclusive purchase of this merchandise and Toyo is not precluded by oral or written agreement from selling to others.

Under cross-examination, Bressler stated that his firm is not an exclusive purchaser from Toyo and that he believes Toyo sells the same type shutter doors to other people for export to the United States.

The orders and confirmations, parts of collective exhibits 4 and 5, which are dated subsequent to July 19, 1965, were "received only to show that he purchased in only one way from this company."

Exhibit 1 is the affidavit of Eiichi Tobita. He alleges that he reads, writes, speaks and understands the English language; that he is the export manager of Toyo and has worked for that firm for 9 years; that he is responsible for all exportations of merchandise which Toyo manufactures. The affiant further states that Toyo manufactures and sells various types of doors such as shutter doors, louvered doors, shoji doors and thin type doors

for exportation. The affiant also avers that based upon his experience with Toyo since he entered Toyo's employ, he has personal knowledge of the selling practices and pricing of his firm's merchandise sold for exportation to the United States, including wooden shutter doors and louver doors sold to plaintiff. If a prospective customer's credit standing, after investigation, is found to be good, Toyo offers its merchandise to such customer, and to other reliable purchasers who care to buy. Toyo has no written or oral agreement with anyone in the United States, which restricts Toyo in offering its merchandise for sale in the United States.

Mr. Tobita further alleges in exhibit 1, that during the time he has been with Toyo, that firm has offered and sold its merchandise for exportation to the United States "on the basis of an ex-factory price or an F.O.B. Japanese port price depending upon the request of our customers"; that prices at which Toyo offered or sold "were different depending upon the place of delivery"; that if delivery to customers is at the factory, such as is done with plaintiff herein, through their agent, Allied, the price does not include the cost of freight from factory to warehouse in shipping port, storage, "insurance from the factory to on board vessel and shipping charges as these are paid for by our customer"; that if delivery to customer is on board vessel "the above charges are added to our price to our customer as my company must pay these charges"; that not all customers in the United States request delivery at the factory although the plaintiff, as a standard practice does ask delivery at the factory. The affidavit contains a list of 6 alleged "typical sales for the latter half of 1965" commencing July 27, 1965 to December 29, 1965, all such sales being after the dates of exportation of the involved merchandise on July 19, 1965. Three of such sales show delivery at "Factory ground Japan" while three sales show delivery "On board of vessel in Yokohama, Japan." No prices, quantities or purchas-

ers' names and addresses are indicated in said exhibit 1.

Exhibit 2 is a copy of the purchase order sent to Allied, dated May 14, 1965, covering the 804 pieces in three sizes of the imported involved merchandise herein. This exhibit requests the purchase on "Ex-Factory basis." Prices are not shown nor does it state the name of the seller or manufacturer. It indicates "F.O.B. Factory Japan, seaworthy packing included."

Exhibit 3 is a copy of the "Purchase Confirmation" for said 804 pieces. The maker is shown as Toyo and the prices for each of the three sizes are in Japanese yen at exchange rate of $1.00, equaling yen 360. It states the "Total Ex-Factory price" as $2,646.267 and "Inland charges" (total only), $128.361, and "Total FOB Japan net" $2,774.628, and "Purchasing com' 5%" $138.731, as well as "Grand total" $2,913.36. The exhibit also indicates that "The maker's original sales confirmation is kept by us."

Collective exhibit 4 consists of 8 copies of orders sent to Allied, which are similar in all respects to exhibit 2 for the same three sizes of doors, dated between December 16, 1964 and July 17, 1965. Also included are 21 copies of similar orders sent to Allied, similar in all respects to exhibit 2 for the same three sizes of doors, dated between August 16, 1965 to May 16, 1967.

Collective exhibit 5 consists of copies of 8 confirmations from Allied which are similar in all respects to the 8 orders sent by plaintiff, as shown, supra, which are dated between December 24, 1964 and July 26, 1965. Also included are 24 similar copies of confirmations to those in exhibit 3, which were sent to plaintiff, dated between August 30, 1965 and May 25, 1967.

The record herein discloses uncontroverted evidence in exhibit 1 by the export manager of Toyo to the effect that his firm offers its merchandise "to anyone who cares to buy" after investigation that credit standing "is found to be

good." Toyo has no written or oral agreement with anyone in the United States which restricts his firm "in the offering of its merchandise for sale to the United States." During 9 years of employment with Toyo said export manager alleges that his firm offered and sold its merchandise for exportation to the United States "on the basis of an ex-factory price or an F.O.B. Japanese port price" depending upon the purchaser's request. The price to plaintiff and to others where the *delivery was at the factory* did *not* include the inland charges here in issue, but did include such inland charges if delivery to the customer was "on board the vessel."

Exhibit 2, the order for the involved merchandise, confirms that the purchase by plaintiff was to be on an "ex-factory" basis. Collective exhibit 4 contains 8 additional orders for identical merchandise placed by plaintiff with Allied prior to the date of exportation herein, July 19, 1965, as well as 21 additional orders, all on an "ex-factory" basis, subsequent to the above date, all for the same merchandise.

Exhibit 3 is the confirmation of the order, exhibit 2, for the involved merchandise and states the "Total Ex-Factory price," and also the inland charges of $128.361 which is the same amount for said charges as indicated in the invoice part of the official court papers. Collective exhibit 5 contains 8 additional confirmations for the 8 orders mentioned in the foregoing paragraph, as well as 24 similar additional confirmations of orders, all showing "ex-factory" prices, for sales subsequent to July 19, 1965.

It will be observed that all purchases by plaintiff were on an "ex-factory" basis without inland charges, all confirmed on that basis by Allied. The plaintiff purchased only one way from Toyo though Toyo also sells to others and freely offers, good credit risks, on the same basis as well as "On board of vessel in Yokohama, Japan" with inland charges included. Counsel for defendant did not offer oral or documentary evidence but interrogated Mr. Bressler concerning the confirmations, collective exhibit 5, as follows (R. 14):

Q. Mr. Bressler, did you always make copies of the confirmations?—A. No, the confirmations come in to me as an original and duplicate. I must submit an original to Customs.

Q. And you retained the duplicate?—A. Yes. I believe you will find in the Customs files that they have all the originals, or should have.

Under cross-examination of Mr. Bressler, defendant's counsel only asked the following two questions and received the following answers (R.15):

Q. You are not an exclusive purchaser from Toyo Door Industries?—A. No.

Q. Do you know whether or not Toyo Door sells the same type of shutter doors to other people for export to the United States?—A. I believe that they do.

The values found by the appraiser are presumptively correct and the burden rests upon the challenger to prove otherwise. 28 U.S.C., section 2633. In Arditi v. United States, 50 CCPA 49, 51, C.A.D. 818, the court stated:

There is a statutory presumption that the finding of value by the appraiser is correct and the burden here rests on the appellant to prove that the appraised value is erroneous. If successful in this step, he must go further and establish that some other dutiable value is proper. This burden does not shift unless and until the importer shows prima facie such appraisement to be erroneous and establishes a different value in lieu thereof. Brooks Paper Company v. United States, 40 CCPA 38, C.A.D. 495; Kittleson v. United States, 40 CCPA 85, C.A.D. 502.

The Government need not prove that the appraised value is proper until the importer shows it is erroneous and establishes a different value. Kobe Import Co. v. United States, 42 CCPA 194, 196, C.A.D. 593.

■ On the record herein, the importer has made out a *prima facie* case overcoming the presumptively correct findings of value by the appraiser. Plaintiff has unquestionably established that the instant merchandise and identical merchandise was purchased on an ex-factory basis by plaintiff and that the exporter has offered and sold such merchandise to other United States buyers on the same basis. There were no restrictions as to the exporter's right to offer and sell its merchandise for sale to the United States "to anyone who cares to buy" if credit standing is found to be good. The statements in exhibit 1 made by Mr. Tobita, the exporter's export manager, are based upon his responsibility for all exportations of his firm's products, and are also based upon his "personal knowledge of the selling practice and pricing of my company's merchandise sold for exportation to the United States," including wooden shutter doors sold to plaintiff herein, and upon his "experience with the company since I entered this company" 9 years ago. This is sufficient to establish, where counsel stipulated that export value, 402(b), *supra*, is the proper basis for appraisement and that the only issue is as to whether or not the involved inland charges are part of dutiable value, that the claimed export values exclusive of the involved inland charges are correct. General Wool Co., Inc., et al. v. United States, 56 Cust.Ct. 730, R.D. 11177, affirmed, Same v. Same, 60 Cust.Ct. 970, A.R.D. 240. See also National Carloading Corp. v. United States, 43 Cust.Ct. 531, R.D. 9535, affirmed United States v. National Carloading Corp., 46 Cust.Ct. 745, A.R.D. 125; Minkap of California, Inc., by Frank P. Dow Co., Inc. of L. A. v. United States, 46 Cust.Ct. 723, R.D. 10033, affirmed United States v. Minkap of California, Inc., by Frank P. Dow Co., Inc. of L. A., 48 Cust.Ct. 708, A.R.D. 144.

The case of W. J. Byrnes & Co. of N. Y., Inc., Panation Trade Co. v. United States, 61 Cust.Ct. ——, R.D. 11583, cited by defendant, is not controlling herein.

In the cited case the issue is whether the appraiser improperly included inland freight charges in his appraisement. Here it is whether the appraiser improperly included freight and other inland charges. In the cited case the court stated that the important factor "is whether or not the merchandise is ever sold or offered for sale at prices which do not embrace freight charges." The court also stated that plaintiff had the burden of establishing that such or similar merchandise was freely sold or offered for sale, to all purchasers at the ex-factory prices but that "In my opinion, this burden has not been met in the case at bar" and that "Unless all purchasers could buy at the ex-factory prices, prices paid by one purchaser do not constitute statutory export value."

In the case now before this court, there is uncontroverted evidence that the exporter sold and offered for sale to *all* purchasers at an ex-factory price, *exclusive* of inland charges, which some purchasers accepted, while others purchased f.o.b. Japan seaport "on board the vessel," *plus* inland charges.

The Special Customs Invoice part of the official court file in evidence shows that the inland freight is not included in the invoice price or value; that sales have been made at an ex-factory price; and that the price or value of the goods is not the same at the point of delivery.

The *unit* export value under stipulation of counsel is concededly correct and was not subject to further proof as the appraisement is *separable* and the importer could challenge only one item which here is whether the inland charges should be included. Standard Brands Paint Co., Inc. v. United States, 59 Cust.Ct. 616, R.D. 11345, citing and following United States v. Chadwick-Miller Importers, Inc., et al., 54 CCPA 93, C.A.D. 914. See also United States v. Fritzsche Bros., Inc., 35 CCPA 60, 62, C.A.D. 371, citing United States v. Freedman & Slater, Inc. (Household Utilities Mfg. Corp.), 25 CCPA 112, T. D. 49241. In United States v. Tapetes Luxor S. A. et al., 54 CCPA 116, 119, C.

A.D. 921, the purchaser had the option of buying at f.o.b. Texcoco, Mexico, prices as well as f.o.b. Laredo, Texas, prices. In the case at bar, purchasers had the option to purchase either on an ex-factory basis *without* inland charges or f.o.b. Japan seaport with inland charges added to the ex-factory prices.

Other cases cited and relied upon by defendant have been considered, but they do not warrant a conclusion that the herein involved inland charges, on the instant record, are part of the statutory export value of the imported lauan wood shutter doors.

On the record herein, the unit prices of the 804 pieces of lauan wood shutter doors, as invoiced, exclusive of the invoiced inland charges aggregating $128.361 represent the export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

The court makes the following findings of fact:

1. The merchandise covered by this appeal for reappraisement consists of 804 pieces of lauan wood shutter doors exported from Japan on July 19, 1965.

2. Appraisement was made at the invoiced unit prices plus the invoiced total of $128.361 (not otherwise shown) for "Inland freight (factory to Yokohama port w/h) Storage, Hauling & lighterage, Insurance premium (factory to on board vessel) [and] Petties" on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 T.D. 295, T.D. 54165.

3. Counsel stipulated that the foregoing defined basis for appraisement is correct; that the said merchandise is not listed on the Final List, 93 Treas. Dec. 14, T.D. 54521, and also "that the only issue herein is whether or not the inland charges are part of dutiable value."

4. All purchases by plaintiff were made through its exclusive Japanese agent, Allied Trading Co., Ltd., on an "ex-factory" basis without inland charges, which are confirmed by orders and confirmations in evidence.

5. The seller, Toyo Door Industries of Tokyo, Japan, sells and offers to sell to others who are good credit risks on the same basis as plaintiff with the option to purchase f.o.b. "On board of vessel in Yokohama, Japan" with inland charges added.

As conclusions of law the court holds:

1. That export value as defined in section 402(b), Tariff Act of 1930, as amended *supra,* is the proper basis for appraisement herein.

2. Said export value is represented by the invoice unit prices, exclusive of the invoiced total charges of $128.361 for "Inland freight (factory to Yokohama port w/h) Storage, Hauling & lighterage, Insurance premium (factory to on board vessel) [and] Petties."

Judgment will be entered accordingly.