5. That the invoice unit values are the export values of the merchandise.

Judgment will issue accordingly.

(C.D. 4740)

AMERIMEX CORPORATION *v.* UNITED STATES

Court Nos. R69/1527, etc.

(Decided May 4, 1978)

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston* (*Mark R. Bernstein* of counsel) for the plaintiff.

*Barbara Allen Babcock*, Assistant Attorney General (*Saul Davis*, trial attorney), for the defendant.

RE, Chief Judge: The question presented in these seven cases, consolidated for purposes of trial, pertains to the correct dutiable value of certain merchandise imported by plaintiff from Mexico from 1965 to 1969. The merchandise, consisting of cotton yarn of various sizes, was appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C. § 1401a(b)).

Both parties agree that export value, as provided in the statutory definition, is the proper basis for appraisement. The merchandise, exported by seventeen different companies, is the subject of 281 entries, 73 of which were subject to a *per se* appraisement.

The entry papers show that the appraising officer appraised the remaining 208 entries at the invoiced unit values "plus item marked 'X', less 1.5¢ per gross lbs. net pkd." The item marked "X" varied by entry, and was either designated "freight and expenses," "frt.," "shipping," "charges and freights," "custom expenses and freight," "other expenses," or "expenses per pound."* It is agreed that these items represented inland freight charges.

No question is raised as to the invoiced unit values. The principal question presented is whether the inland freight charges were properly included as part of the export value of the imported yarn.

The parties agree on the dates of notices of appraisement and the receipt of appeals for reappraisement. Although there is a question on the dates of notice and receipt of appeal for reappraisement in Court No. R69/1527, the defendant has raised no issue as to its timeliness. From an examination of the pleadings, the court has concluded that these appeals are timely.

At the trial, plaintiff abandoned its appeals as to the 73 entries that showed a *per se* appraisement. Consequently, they are severed and dismissed.

Export value is defined in section 402(b) of the Tariff Act of 1930, as amended, as follows:

> "(b) For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other ex-

---

*Some entries set forth "F.O.B." Puebla prices; others read "Price F.O.B. Mexico," "F.O.B. Warehouse Hilados la Esperanza, S.A."

penses incidental to placing the merchandise in condition, packed ready for shipment to the United States."

By this action, plaintiff seeks to have the merchandise reappraised at the invoiced unit values. It contends that "export value" should not include the cost of freight from the plant, where the yarn was manufactured and sold to plaintiff, to Laredo, Texas, since on the dates in question, the imported cotton yarn was available to the plaintiff and other importers on an f.o.b. factory basis. Hence, plaintiff asserts that the "Laredo Freight" was not a part of either the statutory cost of production, or the export value of the imported merchandise. It relies on *Pacific Wood Products Company (James G. Wiley Co.)* v. *United States*, 59 Cust. Ct. 688, R.D. 11369, 277 F. Supp. 122 (1967); *Standard Brands Paint Co., Inc.* v. *United States*, 62 Cust. Ct. 808, R.D. 11628, 295 F. Supp. 1096 (1969); and *Hub Floral Manufacturing Company* v. *United States*, 62 Cust. Ct. 979, A.R.D. 249, 296 F. Supp. 355 (1969), *aff'd*, 57 CCPA 134, C.A.D. 993, 428 F.2d 848 (1970).

At the trial, Mr. Sanford Rosenthal, plaintiff's vice president and treasurer, was its sole witness. In support of its position, plaintiff endeavored to establish that, in each instance, it negotiated the price of cotton yarn with Mexican mills at an f.o.b. factory price; that the mills sold yarn to all purchasers at f.o.b. factory prices; and that the mills never conditioned the sale on the purchaser buying at f.o.b. Laredo prices.

Plaintiff offered into evidence the affidavit of Mr. Ernesto Chedraui, the general director of Textiles Agua Azul, S.A., one of the seventeen exporters of the imported merchandise Defendant objected on the grounds that there was evidence that Mr. Chedraui was reasonably available to testify at the trial; that service of his "affidavit" one week before the trial was contrary to the language and intent of 28 U.S.C. § 2635(b), and Rule 9.6 of the Customs Court; and that the affidavit was not an affidavit within the purview of the hearsay exception set forth in section 2635(b) since it was notarized by a notary of a foreign country without consular certification or dual notarization. At the request of plaintiff's counsel, the court granted time to obtain consular certification or dual notarization, and reserved ruling on the admissibility of Mr. Ernesto Chedraui's affidavit.

Plaintiff's counsel subsequently advised the court by letter that plaintiff had diligently attempted to have Mr. Chedraui submit a new affidavit, but was unsuccessful since Mr. Chedraui was reluctant to become involved in this litigation. Plaintiff thereupon resubmitted the affidavit proffered at the trial. Counsel also submitted the affidavit of Mr. Antonio Chedraui, who held the same position with Textiles Agua Azul, S.A., as did Mr. Ernesto Chedraui.

Defendant has objected to the introduction of Mr. Antonio Chedraui's affidavit on the ground that it was offered after the case had been tried and submitted for decision. In support of its position defendant cites Rules 9.6 (a) and (b) and Rule 10.4 of the Rules of the United States Customs Court. Indicating that plaintiff had 6½ months to have the affidavit properly executed, the defendant renews its objection to the introduction of the affidavit of Mr. Ernesto Chedraui.

The threshold question presented pertains to the admissibility of the two affidavits proffered by plaintiff. In customs litigation in which the value of imported merchandise is in issue, the pertinent statute provides that, in addition to other admissible evidence, affidavits of persons "whose attendance cannot reasonably be had, may be admitted in evidence when served upon the opposing party in accordance with the rules of the court." 28 U.S.C. § 2635(b)(1). *See also* Rule 9.6(a), Rules of the United States Customs Court.

Rule 9.6(b) prescribes the manner of service:

"(b) *Service:* A copy of any report, deposition or affidavit described in paragraph (a) of this rule which is intended to be offered in evidence shall be served on the opposing party with the notice of trial. A party other than the party serving the notice of trial shall serve a copy of any such report, deposition or affidavit which he intends to offer in evidence upon the opposing party within 15 days after service of the notice of trial. Timely service of copies of such documents may be waived or the time extended upon consent, or by order of the court for good cause shown."

Consequently, in customs valuation cases, affidavits of persons whose attendance cannot reasonably be had are admissible into evidence. However, when timely objection is made, on the ground that the affiants could reasonably have attended the trial, the objection should be sustained. *See United States* v. *Rodier, Inc.*, 23 CCPA 336, T.D. 48196 (1936); *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 2 Cust. Ct. 846, R.D. 5423 (1939), *decided on remand*, 4 Cust. Ct. 630, R.D. 4728 (1940), *aff'd*, 6 Cust. Ct. 832, R.D. 5161 (1941); *United States* v. *Clayton Chemical & Packaging Company*, 52 CCPA 111, C.A.D. 867, 357 F. 2d 1009 (1965), *remanded* 383 U.S. 821, 86 S. Ct. 1128 (1966) for the purpose of enabling the importer to fill the evidentiary void by presenting other types of proof available to it.

Subsection (b) of 28 U.S.C. §2635, as amended, is derived from former section 2633 of title 28. In the *Clayton Chemical & Packaging Company* case, the Court of Customs and Patent Appeals discussed the prior section which had been broadened to embrace persons "whose attendance cannot be reasonably had" irrespective of their residence. The court stated that whether attendance may reasonably be had is a factual question to be determined by the court, and reaffirmed the

reasoning of *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.;* 2 Cust. Ct. 846, R.D. 4523 (1939). The appellate court quoted the following statement of the Customs Court:

"The language [28 U.S.C. § 2633] is plain that affidavits may be admitted of persons whose attendance cannot reasonably be had. It is our opinion that, when timely objection is made to the admissibility thereof upon the ground that the attendance of the affiants might be had in court, such objection should be sustained unless and until a proper showing is made upon the part of the party offering the affidavits that the attendance at the trial of the persons executing the same cannot reasonably be had. In the event of such a showing being offered or made, it is for the court to determine whether they are to be admitted or excluded.

Here timely objection was taken to the admission of the affidavits upon said grounds and no offer or showing was made that attendance could not reasonably be had. Under such conditions the trial court should have excluded the affidavits." 52 CCPA at 119.

Plaintiff failed to serve a copy of Mr. Ernesto Chedraui's affidavit either with its original notice of trial of November 4, 1974, or the subsequent notice of trial served by mail on October 31, 1975. One week before trial, on December 23, 1975, plaintiff filed a motion to allow it to offer into evidence Mr. Ernesto Chedraui's affidavit, which had been prepared after the last notice of trial had been served and filed. It was only at that time that the defendant received the affidavit that plaintiff sought to introduce into evidence.

On *voir dire*, Mr. Rosenthal testified that, during his trips to Mexico, Mr. Ernesto Chedraui previously declined to submit an affidavit in this case. It was only a few months before trial that Mr. Rosenthal was advised that Mr. Ernesto Chedraui was willing to execute an affidavit. The record shows that the affiant, Mr. Ernesto Chedraui, had been in Mr. Rosenthal's offices in Charlotte, North Carolina, two to three weeks prior to trial. No subpoena was served upon Mr. Chedraui.

Mr. Ernesto Chedraui is general director of one of the plaintiff's suppliers, and although he was reluctant to provide an affidavit, he could have been subpoenaed when he was in Charlotte. The explanation given by Mr. Rosenthal, as well as the explanation set forth in plaintiff's moving papers, are insufficient to deprive the defendant of its right of confrontation and cross-examination of plaintiff's witness. On the facts presented the court finds that neither the provisions of 28 U.S.C. § 2635(b) nor those of the applicable rule have been met. Accordingly, the defendant's objection to the introduction of the affidavit of Mr. Ernesto Chedraui is sustained.

Mr. Antonio Chedraui's affidavit was mailed to the court on June 15, 1976, about 5½ months after this case was tried and submitted. It was executed on May 12, 1976 before Notary Public Janice Dale Goins, and bears a notary seal of Mecklenburg County, North Carolina. Neither plaintiff's attorney nor Mr. Antonio Chedraui in his affidavit offers any explanation why Mr. Chedraui could not reasonably have attended the trial. Clearly the affidavit was not served in accordance with Rule 9.6(b). Since it does not meet the requirements of the pertinent statute and rule of this court, it is inadmissible, and the defendant's objection is sustained.

No witnesses were called on behalf of the defendant. Defendant's case rests on exhibits B and C, collective exhibit D, and the statutory presumption of correctness that attaches to the appraisement. 28 U.S.C. § 2635(a).

Exhibit B is a copy of an irrevocable letter of credit for plaintiff's account, dated January 31, 1966, from the North Carolina National Bank to Lonas el Leon, S.A., Puebla, Mexico. It is illustrative of letters of credit issued to the various exporters by plaintiff before the imported merchandise could be shipped to the United States. The letter of credit included a price or amount that was 100% of the invoice value of the merchandise covered by entry No. 847–E, less customs duties. Exhibit C is a letter dated March 11, 1966 from plaintiff to U.S. Customs. It is attached to the special customs invoice for entry No. 761–E, and deals with the price plaintiff paid the exporter/seller of the merchandise, and the terms of sale. It is illustrative of the type of information Mr. Rosenthal supplied the customs officials for the imported merchandise. Collective exhibit D consists of 16 other letters to U.S. Customs, signed by Mr. Rosenthal and submitted with entry papers, which are illustrative of the manner in which plaintiff described the purchases of the imported merchandise.

Plaintiff relies on the judicially established principle that, for appraisement purposes, inland freight charges are part of dutiable value if the merchandise can only be purchased in the principal markets of the exporting country for exportation to the United States at prices which include those charges. Conversely, if it can be shown that the merchandise was freely offered for exportation in the principal markets at prices which excluded inland freight charges, they are not part of dutiable value. *Albert Mottola* v. *United States*, 46 CCPA 17, C.A.D. 689 (1958), citing *United States* v. *Paul A. Straub & Co., Inc.*, 41 CCPA 209, C.A.D. 533 (1954) *cert. denied*, 348 U.S. 823, 75 S. Ct. 37 (1954). Hence, plaintiff has attempted to establish that, in each instance, it negotiated the price of the merchandise at an f.o.b. factory price; that the Mexican mills sold yarn to all purchasers at f.o.b. factory prices; and that it never conditioned the sale on the pur-

chaser buying f.o.b. Laredo prices. It submits that the law is clear that the "export value" of the imported merchandise does not include inland freight charges.

Mr. Sanford Rosenthal testified for the plaintiff to the following effect: During the period 1965–1969 plaintiff was primarily engaged in importing cotton yarn from Mexico, and during those years he negotiated for 2 to 2½ million pounds of yarn from Mexico. He had negotiated for the purchase of the imported yarn for plaintiff in Mexico, and had dealt with approximately 20 mills in Mexico that exported yarn to the United States. The price paid by plaintiff for the yarn was based on f.o.b. factory, Puebla, and did not include inland freight from the factory to Laredo, Texas.

Mr. Rosenthal stated that he was personally aware of the prices that the Mexican manufacturers were charging other American importers as well as plaintiff during this period, as he had seen the competitors' invoices, and had visited and conversed with them. He said that during the pertinent period negotiations made by him with Agua Azul were made on the basis of net f.o.b. factory. In each instance the price was determined as to the base net price, i.e., net f.o.b. factory, and freight to Charlotte, North Carolina, was added for mutually agreed upon conveniences. During the period in which Mr. Rosenthal was negotiating with the Mexicans, and doing business in Mexico, he said no Mexican yarn exporter required that he purchase yarn on the basis of f.o.b. Laredo as a condition of doing business. No Mexican yarn exporter ever informed or advised him that American yarn importers could only purchase yarn in Mexico on the basis of f.o.b. Laredo.

On cross-examination, Mr. Rosenthal conceded that an f.o.b. factory price, with charges to the destination could be considered a c.i.f. (i.e., cost, insurance, freight) sale. He stated that when the price for the merchandise and other terms of sale were agreed upon, he would send Agua Azul an irrevocable letter of credit for the full amount on the invoice less customs duties. The invoice did not include an amount for freight from Agua Azul's mill to the Nuevo Laredo border; freight was to be prepaid to Charlotte. Each and every invoice in this case included an amount for freight from the Mexican mills to Charlotte. Mr. Rosenthal testified that he sent irrevocable letters of credit to the Mexican mills, as illustrated by defendant's exhibit B, before the merchandise could be shipped to the United States. They included a price or amount that was 100% of the invoice value of the merchandise shipped to him less customs duties.

Mr. Rosenthal's company obtained physical possession of the merchandise at Charlotte. As to its transportation, he testified that the various Mexican mills hired the carrier that transferred the

merchandise from the factories to the Nuevo Laredo border; that Mexican sellers prepaid all of the documents necessary for shipment to that point under an agreement with plaintiff; and that Mexican exporters hired a customhouse broker, J. O. Alvarez, to take care of the transit from Nuevo Laredo to Charlotte. The merchandise shipped by Agua Azul was insured against any loss or theft occurring before it reached the Nuevo Laredo border. Plaintiff hired the insurance company that covered the shipment. Shipments from the Mexican mills to Charlotte were cost and freight shipments.

Exhibit C was read into evidence:

"Attached to Special Customs Invoice to explain difference in total dollar import value.

This is to advise that the price per pound of 28/1 carded cotton yarn of 54¢ per pound has been inflated for purpose of a subsidy received by the producing mill. *Our purchase price is to include freight prepaid to Laredo, Texas.* The mill has added to this price to reflect freight paid to Charlotte, N.C. from Laredo, Texas of 1½¢ per pound and the U.S. Customs duties of 5½¢ per pound.

We are paying the Customs Duties ourselves and the Letters of Credits we issue to the mills reflects this. They must deduct this amount from the draft before payment will be made.

Accordingly we have figured duties based on 47¢ per pound at 10.8% ad valorem." (Emphasis added.)

Other similar letters had been sent to U.S. Customs (collective exhibit D), and counsel stipulated that "they were all signed by the client and submitted with the entry papers."

Mr. Rosenthal testified that invoices to other American importers that he had seen were, to the best of his knowledge, "F.O.B. the mill." His recollection, however, was hazy. He named the merchandise as cotton, but could not tell the ply of the yarn, the yarn number, the name of the importer, the date of invoice, or the shipment destination.

On redirect examination, Mr. Rosenthal testified further as follows: that freight and tariff added to the invoices were at the request of the Mexican producer; that the Mexicans did not condition the sale of yarn to include the cost of freight and tariff to Charlotte; that the sale was consummated on the basis of "F.O.B. the factory" price; and that the means of transportation chosen by the mill was at his request. Counsel for plaintiff pointed out that there was only one railroad in Mexico.

The question presented is whether the inland freight charges, i.e., the costs incurred in transporting the imported merchandise from the factory to the port of export, are part of its dutiable value.

In accordance with the statutory definition, export value is the price at which the merchandise is freely sold or offered for sale in the

principal markets of the country of exportation, plus, when not in-cluded, the cost of packing and other expenses incidental to making it ready for shipment. Charges accruing subsequently, such as the cost of inland freight, are not part of the merchandise *per se*, and are not ordinarily part of export value. The court must, therefore, as-certain whether the merchandise was ever sold or offered for sale at prices which did not embrace those charges.

The basis for determining whether inland charges are a part of export value of imported merchandise was discussed at length by this court in *Hub Floral Manufacturing Company* v. *United States,* 62 Cust. Ct. 979, A.R.D. 249, 296 F. Supp. 355 (1969), *aff'd,* 57 CCPA 134, C.A.D. 993, 428 F.2d 848 (1970):

> "The rule for determining whether or not inland charges are a part of the export value of imported merchandise derives from the holding in the cases of *United States* v. *Paul A. Straub & Co., Inc.,* 41 CCPA 209, C.A.D. 553; *Albert Mottola, etc.* v. *United States,* 46 CCPA 17, C.A.D. 689, that such value includes the charges, if the merchandise is *never* offered for sale or sold at any price exclusive of the charges. Where, however, the mer-chandise is offered for sale or sold on an ex-factory basis, the factory being the principal market, at a price which does not include the charges, they are not to be considered a part of the statutory value of the merchandise. *United States* v. *Lyons,* 13 Ct. Cust. Appls. 639, T.D. 41484. Since the statutory definition of export value is framed to reach a price in the principal market of the country of exportation of "merchandise in condition, packed ready for shipment to the United States," it is clear that it does not ordinarily contemplate the inclusion of charges incurred subsequent to that time and place, and the *Straub* and *Mottola* cases, *supra,* are predicated upon the exceptional showing that the only price in the principal market is the one which includes the charges. For the reason that such charges are said to be inextricably bound up with the cost of the merchan-dise and incapable of separation therefrom, they form an integral part of the unit value of the merchandise. But especially since such transactions with the inevitable consequence of inseparability represent the exception rather than the rule, the courts are dis-posed to adopt a lenient view toward the quantum of proof requisite to establish exfactory sales exclusive of disputed charges. *United States* v. *Dan Brechner & Co.,* 38 Cust. Ct. 719, A.R.D. 71, affirming *Dan Brechner & Co.,* v. *United States,* 36 Cust. Ct. 612 Reap. Dec. 8599; *United States* v. *Supreme Merchandise Company,* 48 Cust. Ct. 714, A.R.D. 145; *United States* v. *Gitkin Co., supra, United States* v. *Bud Berman Sportswear, Inc., surpa; United States* v. *Chadwick-Miller Importers, Inc., et al., supra.*" (Emphasis in original.) 62 Cust. Ct. at 984–85.

In the case at bar, the defendant has conceded that the appraisements are separable. Accordingly, plaintiff may challenge the charges based upon inland freight, and still rely upon the presumption of correct-

ness of the appraiser's valuation for the unchallenged items. *United States* v. *Imperial Products, Inc.*, 65 CCPA 38, C.A.D. 1203, 570 F.2d 337 (1978); *United States* v. *H. M. Young Associates, Inc.*, 62 CCPA 20, C.A.D. 1138, 505 F.2d 721 (1974); *Standard Brands Paint Co., Inc.* v. *United States*, 62 Cust. Ct. 808, R.D. 11628, 295 F. Supp. 1096 (1969).

It was incumbent upon plaintiff to establish that its merchandise was sold or freely offered for sale *to all purchasers* at the "ex-factory" price exclusive of the disputed inland freight charges. *Albert Mottola* v. *United States*, 46 CCPA 17, C.A.D. 689 (1958).

The record, however, only establishes the manner in which plaintiff purchased the subject yarn. Mr. Rosenthal testified that plaintiff purchased the importations at f.o.b. factory prices, which did not include inland freight charges from the factory to Laredo, Texas; that duties and freight charges, prepaid to Charlotte, North Carolina, were added as a convenience to both parties. Letters from plaintiff to U.S. Customs, however, specifically state: "Our purchase price is to include freight prepaid to Laredo, Texas." (Exhibits C and D.)

There is no evidence in the record of actual sales, or of offers of sales, of "such or similar merchandise" at the invoice prices exclusive of the disputed inland freight charges. Mr. Rosenthal testified that no Mexican yarn exporter at any time informed him or advised him that American yarn importers could only purchase yarn in Mexico on the basis of f.o.b. Laredo. Although he said that he had seen invoices to other American importers which were "F.O.B. the mill," he could not be specific or give any details. Furthermore, other than Textiles Agua Azul, S.A., he offered no evidence with respect to the seventeen exporters to establish that they sold or freely offered for sale such or similar merchandise to *all* purchasers in accordance with the statutory provisions for export value. Apart from the attempt to introduce the inadmissible affidavits of two directors of Textiles Agua Azul, S.A., the record is devoid of any evidence having probative value in support of plaintiff's position.

In customs reappraisement cases, it is too well established to require citation of authorities that, to prevail, the plaintiff must bear its burden of proof. Plaintiff must overcome the statutory presumption of correctness attaching to the value found by the appraiser, and must establish the correct dutiable value of the merchandise. In this case, plaintiff has not met its burden of proof.

Since plaintiff has failed to meet its burden of proof in rebutting the presumptively valid appraisements, the appraised values are affirmed, and these appeals for reappraisement are dismissed.

Judgment will be entered accordingly.